1  Bridget B. Hirsch, Esq.
2  Jeremy E. Deutsch, Esq.
     *(Pro Hac Vic Admission to be Sought)*
3  Christian V. Cangiano, Esq.
     *(Pro Hac Vic Admission to be Sought)*
4  ANDERSON KILL L.L.P.
   Wells Fargo Building
5  355 South Grand Avenue, Suite 2450
   Los Angeles, CA  90071
6  Tel:   (213) 943-1444
   Fax:  (212) 278-1733
7
8  *Attorneys for Plaintiffs*

9

10              UNITED STATES DISTRICT COURT FOR
                THE NORTHERN DISTRICT OF CALIFORNIA

11
12  STEVEN A. SUGARMAN, COR CAPITAL,        **Civil Action No.**
    LLC, COR ADVISORS, LLC
13                                          **COMPLAINT FOR:**
                          Plaintiffs,
14                                          **(1) VIOLATION OF CALIFORNIA**
         -against-                          **CODE 17200 FOR UNFAIR**
15                                          **COMPETITION;**
    MUDDY WATERS CAPITAL, LLC, JASON
16  GALANIS, CASTALIAN PARTNERS, LLC,       **(2) CONSPIRACY TO VIOLATE**
    CARSON BLOCK, JAMES GIBSON, DAVID       **CALIFORNIA CODE 17200 FOR**
17  Q. MATTHEWS, GARY ROBERT                **UNFAIR COMPETITION;**
    MATTHEWS, KALYN MATTHEWS
18  DENNO, ADAM J. DENNO, KEITH ALLEN       **(3) DEFAMATION;**
    DILLING, ROSEMARY NORRIS HALL,
19  RYAN KEALY, NIKOLAI BJORKEDAL,          **(4) VIOLATION OF THE RACKETEER**
    CASTALIAN PARTNERS VALUE FUND,          **INFLUENCE CORRUPT**
20  LP, QKM, LLC, MUDDY WATERS              **ORGANIZATIONS ACT - 18 U.S.C.**
    RESEARCH LLC, MLAF LP, MWCP LLC,        **§ 1962(c); and**
21  JOHN DOES 1-30
                                            **(5) CONSPIRACY TO VIOLATE 18**
22                                          **U.S.C. § 1962(c) OF THE RACKETEER**
                          Defendants.       **INFLUENCE CORRUPT**
23                                          **ORGANIZATIONS ACT IN**
                                            **VIOLATION OF 18 U.S.C. § 1962(d)**
24
                                            **DEMAND FOR JURY TRIAL**
25

26

27

28

**COMPLAINT**

docs-100162714.1

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3

OVERVIEW OF THE ACTION ........................................................................1

4

PARTIES AND RELATED NON-PARTIES ...................................................1

5

JURISDICTION AND VENUE .......................................................................6

FACTS WITHIN THE EXCLUSIVE CUSTODY AND CONTROL OF DEFENDANTS .........8

6

AGENCY AND CIVIL CONSPIRACY ALLEGATIONS ..............................8

7

OPERATIVE FACTS COMMON TO ALL COUNTS ....................................9

8

BACKGROUND ...............................................................................................9

9

OVERVIEW OF CONSPIRACY AND PLAYERS ....................**Error! Bookmark not defined.**

The Galanis Motivation for Attacking Sugarman and the Plaintiffs ........................10

10

Overview of the Enterprise and the Scheme.........................................................13

11

The Defendants Conceal Their Roles and Identities ............................................15

Effect of the Scheme on the Plaintiffs .................................................................17

12

The Scheme ...........................................................................................................18

13

The Implementation of the Scheme ......................................................................26

14

DISTORT AND ATTACK LEADING TO DAMAGES ................................29

15

TO COVER THE SHORT................................................................................34

On-Going Scheme Against Plaintiffs – To Cover Their Tracks........................37

16

CAUSES OF ACTION....................................................................................42

17

FIRST CAUSE OF ACTION:  UNFAIR COMPETITION  (CA Civil Code § 17200 – Against All Defendants)...........................................................................................................42

18

SECOND CAUSE OF ACTION:  CONSPIRACY TO ENGAGE IN UNFAIR COMPETITION (Against All Defendants)...................................................................................................44

19

THIRD CAUSE OF ACTION:  DEFAMATION  (Against All Defendants)..............................45

20

FOURTH CAUSE OF ACTION:  VIOLATIONS OF THE RACKEETER INFLUENCED CORRUPT ORGANIZATIONS ACT – 18 U.S.C. § 1962(c)  (Against All Defendants)............45

21

Enterprise ..............................................................................................................45

22

The Racketeering Violation ..................................................................................48

23

Pattern of Racketeering Activities ........................................................................48

24

The Predicate Acts constituting Wire Fraud ........................................................49

25

Damages and Standing ..........................................................................................50

26

FIFTH CAUSE OF ACTION:  VIOLATIONS OF THE RACKEETER INFLUENCED CORRUPT ORGANIZATIONS ACT – 18 U.S.C. § 1962(d)  (Against All Defendants) ...........51

27

JURY TRIAL DEMAND ................................................................................52

28

**ANDERSON KILL L.L.P.**
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

i
**COMPLAINT**

docs-100162714.1

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

Plaintiffs, Steven A. Sugarman, COR Capital, LLC, and COR Advisors, LLC, as and for their complaint against all defendants set forth above in the caption, respectfully allege upon personal knowledge or upon information and belief where indicated, as follows:

## OVERVIEW OF THE ACTION

1.      This action is brought against defendants who, individually and collectively, engaged and continue to engage in a pattern of racketeering activity and unfair competition by means of unlawful, unfair and/or fraudulent business acts and practices.

2.      Defendants' conduct was a collective undertaking and conspiracy to destroy the reputation and business prospects of Steven Sugarman and his limited liability companies and simultaneously to profit from the destruction of Mr. Sugarman's and the other plaintiffs' professional reputations. As a result of the serial, coordinated attacks on Mr. Sugarman and his associated entities, plaintiffs were damaged, the defendants profited, and other unrelated parties were also defrauded.

3.      The plaintiffs seek recovery under claims of violation of the Racketeer Influenced and Corrupt Organizations statutes, the California Unfair Competition statutes, and under common law claims.

## PARTIES AND RELATED NON-PARTIES

4.      Plaintiff Steven A. Sugarman ("Sugarman") is the former Chairman of the Board, President, and Chief Executive Officer of Banc of California and a prominent California businessman.  He is also the Managing Member of COR Plaintiffs.  He is now and at all times relevant was a resident of the County of Los Angeles and the State of California.  Plaintiff Sugarman has suffered an injury-in-fact for which he is entitled to seek monetary damages and/or equitable relief.

5.      COR Capital, LLC is a Delaware limited liability company, headquartered and registered to do business in California that is managed by Steven Sugarman and owned by Mr. Sugarman and his wife.

6.      COR Advisors, LLC is a Delaware limited liability company headquartered and registered to do business in California that is managed by Steven Sugarman and owned by Mr.

1
**COMPLAINT**

1   Sugarman and his wife.

2          7.      Mr. Sugarman was also at all relevant times the managing member of COR

3   Capital LLC, a Southern California-based investment firm ("COR Capital") and COR Advisors

4   LLC ("COR Advisors") (collectively, the "COR Plaintiffs").

5          8.      Banc of California, a non-party, is a federally chartered financial holding

6   company under the laws of the United States with its principal place of business in Santa Ana,

7   CA.  It is a publicly traded company under the ticker symbol "BANC" on the New York Stock

8   Exchange.  Banc of California has a national bank subsidiary Banc of California, NA (Banc NA).

9   Banc of California was incorporated in March 2002 and formerly known as "First PacTrust

10   Bancorp, Inc."  It changed its name to Banc of California in July 2013.  Mr. Sugarman and the

11   COR Plaintiffs led the recapitalization of Banc of California (then called First PacTrust Bancorp)

12   in November 2010 and Mr. Sugarman became a member of Banc of California's Board of

13   Directors following the closing of the transaction.  In 2012, Mr. Sugarman became the Chief

14   Executive Officer of Banc of California and in 2013 Mr. Sugarman became the Chairman,

15   President, and Chief Executive Officer of both Banc of California and Banc NA.

16          9.      Defendant Jason Galanis ("Galanis") is a convicted felon who presented himself

17   as an investor and businessman until he pled guilty to participating in two separate financial

18   frauds, one of which involved the manipulation through a "pump and dump" scheme of the stock

19   of the now-defunct reinsurer, Gerova Financial Group, Ltd., and the other of which involved a

20   scheme to defraud a Native American tribe and multiple pension funds through the issuance of

21   $60 million worth of tribal bonds.  Mr. Galanis is currently a resident of the FCI Terminal Island

22   Correctional Facility located in San Pedro, California where he is serving out a sentence for

23   those crimes with a release date of July 9, 2030.  Galanis' brother, Derek Galanis, in a book he

24   published in 2019, states that Galanis is an expert at forging and lifting signatures, manipulating

25   documents. and creating fraudulent documents.  He also states that Galanis, who was dubbed

26   "Porn's New King" by Forbes Magazine in 2004, and was charged by the SEC in 2005 for his

27   role in a fraud relating to Penthouse Magazine, has long-term connections with the Gambino

28   organized crime family and often threatens people (including his own family) with extortion,

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

docs-100162714.1

1   including by threatening to make false regulatory reports in order to pressure them into

2   facilitating his wrongdoing or to punish them for not facilitating his wrongdoing.

3          10.     Defendant Muddy Waters Capital, LLC (Muddy Waters Capital) is affiliated with

4   Defendants Muddy Waters Research LLC, MLAF LP, and MWCP LLC (collectively "Muddy"

5   or "Muddy Waters") which all hold themselves out as specializing in research, investment, and

6   trading in short sales of publicly traded equities[1].  Muddy Waters Capital and MWCP are limited

7   liability companies formed under the laws of the State of Delaware with their principal places of

8   business in San Francisco, CA.  MLAF is a limited partnership formed under the laws of the

9   State of Delaware with its principal place of business in San Francisco, CA.   Upon information

10  and belief, Muddy Waters Research is a limited liability company formed under the laws of the

11  State of Delaware with its principal place of business in San Francisco, CA. Muddy Waters has

12  admitted to using pseudonyms and anonymous blogs and sham "research" organizations to

13  publish allegations of wrongdoing to support its short positions in the past (and Muddy Waters

14  has been sued for such conduct by parties who allege its allegations were false, defamatory and

15  violated the law).  Upon information and belief, Muddy Waters' members and/or partners are all

16  residents and domiciliaries of the State of California.

17         11.     Defendant Carson Block ("Block") is the managing member and founder of

18  Muddy Waters and is also a resident of the State of California.

19         12.     Defendant Castalian Partners Value Fund, LP ("Value Fund") is a limited

20  partnership organized under the laws of Delaware with the principal place of business in

21  Excelsior, Minnesota.  Upon information and belief, Value Fund's partners are all residents and

22  domiciliaries of the State of Minnesota.

23         13.     Defendant Castalian Partners, LLC ("Castalian Partners"), the general partner of

24  Value Fund, is a Minnesota limited liability company with its principal place of business at, upon

25

26  [1] A short sale of common stock is a trading strategy which speculates on the decline in the price of the stock.  Under
    a short trade, a trader borrows a security which is trading for $X and pledges to return the security by a date
27  specified.  The trader then sells the security for that same $X with the expectation that the price of the security will
    drop such that the trader can repurchase the security from another party at the lower price ($X-1) prior to the date on
    which the security must be returned to the party from whom the trader borrowed it.  The trader intends to profit from
28  the difference between the price at which she sold the security and the price for which she had to repurchase prior to
    returning it.

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

information and belief, the same address as the Value Fund (Castalian Partners together with Value Fund are referred to herein as "Castalian"). Upon information and belief, Castalian's members all residents and domiciliares of the State of Minnesota.

14. Defendant James Gibson ("Gibson") is a resident of the State of Minnesota and is the manager of Castalian Partners and the executive officer of the Castilian Value Fund. Defendants Value Fund, Castalian Partners and Gibson are referred to collectively as the "Castalian Defendants".

15. The Aurelius Enterprise ("Aurelius Enterprise" or "Aurelius"), a non-party, is an association-in-fact operated and directed by the Aurelius Defendants to engage in the publication of information, research and communications over the internet. On information and belief, the Aurelius Enterprise is controlled by an incarcerated convict, hedge fund managers, stock traders, and market participants who use social and traditional media in conjunction with stock trading to impact stock prices for profit. The Aurelius Enterprise is operated as an enterprise under 18 U.S.C. Sec. 1961(4) in that it is, among other things, a group of individuals associated in fact although not itself a legal entity. While the identity of the co-conspirators who direct and operate the Aurelius Enterprise is currently not publicly disclosed, on information and belief the Aurelius Defendants direct, manage, operate, coordinate, and/or contribute to the Aurelius Enterprise. Additionally, the Windfall Defendants (some of whom are also Aurelius Defendants) profit from the Aurelius Enterprise through stock trading, and knowingly facilitate the Aurelius Enterprise's schemes, including financially and operationally to further their mutual goals. Defendants and other co-conspirators participated as set forth herein in the operation, management, and control of the enterprise but all defendants, upon information and belief, did actively participate. Aurelius' disclosures on Seeking Alpha state that "I am/we are short BANC" implying that an association of persons control the blog. The Aurelius Enterprise's blog on Seeking Alpha has at all relevant times been free for public viewing and was not subject to verification by Seeking Alpha as to its content.

16. Seeking Alpha ("Seeking Alpha"), non-party, is an online platform on which users can submit articles covering news and analysis about various aspects of the financial

4
COMPLAINT

docs-100162714.1

markets. There is no limit to who can contribute to Seeking Alpha and Seeking Alpha permits pseudonymous publication. Seeking Alpha has an editorial team of 56 who purport to curate content from a network of stock analysts, traders, economists, academics, financial advisors and industry experts. Seeking Alpha has reported that as of February 2019 it received more than 41 million visits per month from more than 13.5 million unique visitors. Blog posts submitted to Seeking Alpha are not subject to Seeking Alpha's editorial guidelines or screened by Seeking Alpha's editorial team. Additionally, blog posts on Seeking Alpha are not subject to Seeking Alpha's "dispute resolution process" and as such the Seeking Alpha dispute team will not request an author correct any "material factual inaccuracies" in the blog post and will not request the author withdraw the blog post due to potential errors which could impair a blog post's thesis. The SEC has fined over one-hundred traders for using Seeking Alpha's publication platform to pursue market manipulation tactics including pump and dump and short and distort schemes.

17.     Defendant Gary Robert Matthews is, upon information and belief, a resident of the State of Texas and/or the State of Kansas and is a co-conspirator

18.     Defendant David Q. Matthews ("Matthews") is a resident of the State of Texas and a co-conspirator and short seller who also manages a registered investment advisor, Defendant QKM, LLC, whose clients include Kalyn Matthews Denno, Adam J. Denno, Keith Allen Dilling, Rosemary Norris Hall, and David Matthews, amongst others.

19.     Defendants Kalyn Matthews Denno, Adam J. Denno are, upon information and belief, residents of the State of Kansas and/or the State of Colorado and are co-conspirators

20.     Defendants Keith Allen Dilling and Rosemary Norris Hall are residents of the State of Texas and are co-conspirators.

21.     Defendant QKM, LLC ("QKM") is a registered investment advisor located in Texas that is managed by Matthews and was responsible for recommending and/or placing the trades made by Defendants Matthews, Gary Robert Matthews, Kalyn Matthews Denno. Adam J. Denno, Rosemary Norris Hall, Keith Allen Dilling and QKM who are referred to collectively as the "Matthews Defendants". Upon information and belief, QKM's members are all residents and domiciliaries of the State of Texas.

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

docs-100162714.1

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

22.     Defendant Ryan Kealy is, upon information and belief, a resident of the State of New York and was an institutional trader at Keefe, Bruyette and Woods ("KBW") who coordinated and conspired with the other Windfall Defendants by coordinating with John Does, Windfall Defendants and other institutional traders at other investment banks (many of whom were former employees of KBW) prior to and concurrent with the publication of Aurelius' blogs to enable Defendants to profit from their scheme to distort Sugarman's good name and reputation.  Upon information and belief, he was a participant in the enterprise and engaged in racketeering activity as set forth below.

23.     Defendant Nikolai Bjorkedal is, upon information and belief, a resident of the State of New Jersey and was an institutional trader at FIG Partners, LLC, and on information and belief a former KBW employee, who coordinated and conspired with the Windfall Defendants by coordinating with John Does and other institutional traders at other investment banks prior to and concurrent with the publication of Aurelius' blogs to enable Defendants to profit from their scheme to distort Sugarman's good name and reputation. Upon information and belief, he was a participant in the enterprise and engaged in racketeering activity as set forth below.

24.     Rota Fortunae, a non-party, is a pseudonym used by a group of one or more short sellers to engage in anonymous blogging on the Seeking Alpha website often in coordination with the Aurelius Enterprise.  While the identity of Rota Fortunae currently is not publicly disclosed, the author resides in Houston, Texas and has published posts, comments and other social media communications, including on seekingalpha.com and on Twitter, relating to Mr. Sugarman and Sugarman Entities.

25.     All Defendants, as more fully set forth below, participated in the unfair practices, illegal conduct, management or affairs of the Aurelius Enterprise, or agreed to facilitate the scheme including the racketeering activities of the Aurelius Enterprise.

## JURISDICTION AND VENUE

26.     The subject matter jurisdiction of this Court over the instant action is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331 because the claims asserted in it arise out of the laws of the United States. As is more fully shown below, this action asserts claims that

docs-100162714.1

Defendants violated and conspired to violated the Racketeer Influenced Corrupt Organizations Act – 18 U.S.C. § 1962(c)-(d) and, therefore, the action arises under federal statute.

27.    This Court has personal jurisdiction over Defendants Galanis, Block and Muddy Waters because, upon information and belief, the individual defendants are both citizens, residents and/or domiciliaries of the State of California, and as the entity defendants, upon information and belief, have members that are residents of the State of California, and their principal place of business is within the Northern District of California and they regularly and systematically conduct business from that location.

28.    As to the remaining Defendants, this Court has personal jurisdictions over them pursuant to 18 U.S.C. § 1965(b) as: (1) this Court has personal jurisdiction over at least one participant in the alleged multidistrict conspiracy as set forth in the preceding paragraph; and (2) there is no other district in which a court will have personal jurisdiction over all alleged co-conspirators.  Indeed, the enterprise alleged herein was nationwide and accomplished primarily through anonymous and pseudonymous postings published as part of a joint scheme by defendants domiciled in California (Defendants Galanis, Block, and Muddy Waters as previously stated), defendants domiciled and residing in Minnesota (the Castalian Defendants), Texas, Kansas and/or Colorado (the Matthews Defendants), New York (Defendant Kealy), and New Jersey (Defendant Bjorkedal).  Upon information and belief, none of the Defendants had minimum contacts with any of the states of residence in which the others are residents and but for their participation in this scheme could not be hailed into a single State or Federal Court in on action.

29.    The Court has supplemental jurisdiction over Plaintiffs' related state law claims for unfair competition and defamation pursuant to 28 U.S.C. 1367.

30.    Venue is properly placed in the Northern District of California under 28 U.S.C. 1391(b)(1), as, upon information and belief, at least two of the entity Defendants' principal places of business are in the Northern District of California, and at least one of the individual defendants maintains his residence there.

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

**INTRADISTRICT ASSIGNMENT**

31.     Upon information and belief, this case arose in San Francisco County, California and, pursuant to Rule 3-2(d) of the Local Rules of the Northern District of California, should be assigned to either the San Francisco or Oakland Division of the Northern District.

**FACTS WITHIN THE EXCLUSIVE CUSTODY AND CONTROL OF DEFENDANTS**

32.     The facts as set forth below are alleged with particularity and specificity where possible and where such information is known to Plaintiffs.

33.     However, as alleged herein, Defendants actively have taken steps to hide their identities and their activities and have acted, as set forth herein, to frustrate Plaintiffs' ability to obtain information.

34.     Thus, many of the details about the specifics of the fraudulent activity taken by the Defendants are within the sole and exclusive possession, control, or custody of the Defendants, or subject to protective orders in other proceedings and cannot be stated herein without the benefit of discovery.  However, Plaintiffs have pleaded with sufficient particularity from the results of the good faith investigation and inquiry they have made in order to put Defendants on notice of the specifics of the allegations and causes of action asserted against them.

**AGENCY AND CIVIL CONSPIRACY ALLEGATIONS**

35.     At all times herein mentioned, Defendants were the agents, principals, employees, servants, partners, joint venturers, and representatives of each other. In doing the acts hereinafter alleged, they each were acting within the scope and course of their authority as such agents, principals, employees, servants, partners, joint venturers, and representatives, and were acting with the permission and consent of the other Defendant.  All Defendants had knowledge of and agreed to the misconduct alleged herein.

36.     All Defendants conspired with each other to engage in the common course of misconduct alleged herein, or aided and abetted that common course of misconduct, for the purpose of enriching themselves at the public's and Plaintiffs' expense, resulting in damage to Plaintiff and all others similarly situated.

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

## OPERATIVE FACTS COMMON TO ALL COUNTS

37.     The following operative facts are common to each cause of action alleged herein and as such are brought in this section together.

## BACKGROUND

**Overview of Conspiracy and Players**

38.     At the time of the defendants' scheme, Mr. Sugarman was the Managing Member of COR Capital, LLC and COR Advisors, LLC ("COR Plaintiffs") and until January 2017 Mr. Sugarman was the Chairman, President and Chief Executive Officer of Banc of California, Inc. ("Banc" or "Banc of California"). Mr. Sugarman, COR Plaintiffs, and other businesses affiliated with Mr. Sugarman – including Banc of California, COR Securities Holdings, Inc. ("COR Securities" or "CORSHI") and COR Clearing, LLC (collectively the "Sugarman Entities") – all were harmed by defendants' wrongdoing.

39.     Defendant Jason Galanis ("Galanis") is a recidivist convicted criminal who was imprisoned in 2016 and sentenced to serve approximately fourteen years for stealing millions of dollars from vulnerable investors, including a Native American tribe. Galanis secretly joined and conspired with the other defendants from prison, and the other defendants intentionally concealed his involvement in their collective enterprise.

40.     In 2016, Plaintiff Steven Sugarman provided information to the government in connection with their investigation of Galanis. Through the government's court filings, Galanis became aware of Mr. Sugarman's cooperation with law enforcement. While in prison, Galanis determined to retaliate against and disparage Mr. Sugarman. He used interstate communications from prison – including his limited access to the internet, telephone, and U.S. mail – to direct his proxies outside of prison to communicate with and to provide documents (many of which were fraudulent) and other information to other Defendants for use in their common enterprise.

41.     On information and belief, Defendants Muddy Waters Capital, LLC, Muddy Waters Research LLC, Carson Block, Castalian Partners, LLC, James Gibson, David Q. Matthews, QKM, LLC, Galanis, and John Does 1-10 (collectively, the "Aurelius Defendants") formed, or later joined, an association-in-fact called Aurelius (the "Aurelius Enterprise") on or

docs-100162714.1

1  about December 2015 or early 2016. The Aurelius Enterprise registered social media accounts

2  on various websites including: Aurelius' Blog on seekingalpha.com, and AureliusValue on

3  Twitter which they used in furtherance of their common enterprise.

4       42.    The Aurelius Defendants acted through the Aurelius Enterprise to issue online

5  blogs, tweets, messages and other public and private communications through the internet while

6  concealing their identities, relationships, methods, coordination and/or business practices and

7  affirmatively electing an internet platform that enabled publication of information without

8  controls for the accuracy or authenticity of the content.

9       43.    Defendants Muddy Waters Capital, LLC, MLAF LP, MWCP LLC, Carson Block,

10  Castalian Partners, LLC, Castalian Partners Value Fund, LP, James Gibson, Gary Robert

11  Matthews, David Q. Matthews, Kalyn Matthews Denno, Adam J Denno, Keith Allen Dilling,

12  Rosemary Norris Hall, Ryan Kealy, Nik Bjorkedal, and John Does 11-20 (collectively, the

13  "Windfall Defendants") are a group of individuals or entities who joined together and conspired

14  to profit from the false statements and misrepresentations of the Aurelius Defendants by selling

15  short particular securities or facilitating short sales for others.

16       44.    In the conduct of his legitimate business affairs, Mr. Sugarman was introduced to

17  Galanis and had interactions with him prior to 2015. However, at no time was Galanis ever an

18  owner, officer, control person or employee of any of Mr. Sugarman's businesses.

19  **The Galanis Motivation for Attacking Sugarman and the Plaintiffs**

20       45.    Galanis was one of the key participants in this conspiracy and was motivated by a

21  desire to retaliate against Mr. Sugarman because Mr. Sugarman provided information to the

22  Department of Justice (DOJ), Federal Bureau of Investigation (FBI) and the Securities and

23  Exchange Commission (SEC) in their investigation of Galanis for his various financial frauds

24  and misrepresentations.

25       46.    On information and belief, between 2012 and 2015, Mr. Galanis hijacked, without

26  disclosure or permission, Mr. Sugarman's reputation and business identity by falsely and

27  fraudulently claiming closer affiliations than were factual in furtherance of Galanis' own

28  fraudulent schemes. For instance, without Mr. Sugarman's knowledge, consent, or approval,

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

**ANDERSON KILL L.L.P.**
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

Galanis:

    a.   Obtained confidential documents relating to Mr. Sugarman, COR Plaintiffs and Sugarman Entities through fraudulent and deception means.

    b.   Prepared, created, and used false and fraudulent documents including documents bearing forgeries of Mr. Sugarman's signature.

    c.   Prepared, created and used unauthorized and inaccurate documents including a document called "Introduction to COR Capital" to fraudulently assert and imply that Mr. Sugarman, COR Plaintiffs, Banc of California, Sugarman Entities and various other persons were Galanis' "financial sponsors."

47.    On information and belief, between 2012 and 2015, Galanis attempted to hijack, without disclosure or permission, the business capabilities of COR Plaintiffs and Sugarman Entities for fraudulent purposes. For instance, without Mr. Sugarman's knowledge, consent, or approval, Galanis:

    a.   Caused third parties to seek margin loans from COR Clearing for improper purposes. The request was denied.

    b.   Caused third parties to request COR Clearing participate as a clearing firm for the Tribal Bond Fraud. The request was denied.

    c.   Caused third parties to seek a mortgage loan at Banc of California for a residential property based on false information. The request was denied.

48.    Galanis, directly and through his intermediaries, threatened to retaliate against Sugarman Entities including COR Clearing and its management for refusing to cooperate with requests made by associates of Galanis. Ultimately, Galanis and his associates sought to extort the cooperation of Sugarman Entities and their management by issuing threats. In fact, in one instance, on information and belief, Mr. Galanis threatened an executive at COR Clearing in 2015 indicating that he had created a file that he would send to COR Clearing's regulators

alleging wrongdoing by COR Clearing in an attempt at extortion. This behavior was consistent with the behavior outlined by Galanis' brother in his book published in 2019 relating to Galanis' practice of making regulatory threats to extort family members and business associates to commit wrongdoing. This threat shortly followed COR Clearing's refusal to participate as a clearing firm in the Tribal Bond Fraud and its subsequent demand for repayment of a debt owed by one of its correspondents in which Galanis had a financial interest in. The executive rebuffed Galanis' threat, refused to participate in the Tribal Bond Fraud and filed a lawsuit to seek repayment of the defaulted debt.

49.     In early 2016, the DOJ, FBI and SEC sought to interview Mr. Sugarman as a witness in their investigation of Jason Galanis.  Mr. Sugarman agreed to participate and was interviewed in March 2016.

50.     During the interview, Mr. Sugarman learned that Galanis had been claiming and implying that Mr. Sugarman, COR Capital, COR Clearing, and Banc of California were the "financial sponsors" of Galanis and other persons or entities.

51.     U.S. District Court Judge Ronnie Abrams, before whom the Galanis' prosecution is pending, characterized Galanis' *modus operandi* of engaging in fraud by creating and misusing entities that "were purposefully given names to make them appear related to … legitimate entities."  Opinion and Order, United States v. Galanis et al., No. 16-CR-271, Dkt. 690, at 3 (S.D.N.Y.) Nov. 15, 2018).

52.     During the interview, Mr. Sugarman answered law enforcement's questions to the best of his abilities.  Information provided by Mr. Sugarman was cited in the government's documents used to arrest Mr. Galanis.

53.     Filings laying out Galanis' fraud, including the FBI affidavit and the fraudulent "Introduction to COR Capital" document, were made public by the government and, on information and belief, Galanis, the Aurelius Defendants and the Windfall Defendants became aware of and reviewed them.

54.     In June 2016, Galanis' parole was revoked and Galanis was remanded to prison.

55.     On information and belief, Galanis blames his imprisonment in part on the

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

docs-100162714.1

1    evidence Mr. Sugarman provided to the DOJ and FBI.

2        56.    Galanis' indictment led to his eventual guilty plea in August 2016.  Galanis was

3    sentenced to over eleven years in federal prison for his guilt in the Gerova Fraud and fourteen

4    years for the Tribal Bond Fraud, ordered to disgorge illicit profits and pay restitution of over $15

5    million to his victims, and to forfeit his assets.  The SEC also secured a judgment against Galanis

6    that ordered a bar from the securities industry, a censure, and the disgorgement of approximately

7    $9.6 million.

8        57.    On information and belief, while in prison, Galanis determined to retaliate against

9    Mr. Sugarman and COR Plaintiffs due to Mr. Sugarman's decision to provide information to the

10   DOJ and FBI during its investigation of Galanis.

11       58.    According to court filings, Galanis has threatened others whom he learned

12   cooperated with the government investigation of his illegal acts.

13   **Overview of the Enterprise and the Scheme**

14       59.    Beginning in 2015 or no later than 2016, Defendants conspired to and did join and

15   conduct an "enterprise" through a pattern of racketeering activities that included fraud, unfair

16   competition and unfair business practices targeting Mr. Sugarman, COR Plaintiffs and Sugarman

17   Entities as set forth below and described above.

18       60.    Defendants conspired to knowingly use false, misleading, and even forged

19   information manufactured by Galanis to attack Mr. Sugarman's reputation and harm Plaintiffs

20   and as a byproduct, to generate illegal profits.

21       61.    The Aurelius Enterprise's scheme with respect to Mr. Sugarman and the COR

22   Plaintiffs included the following elements (the "Scheme"):

23        a.    To spread false statements and misleading information about Mr. Sugarman, COR

24             Plaintiffs, and the Sugarman Entities to cause others who had a relationships with

25             Sugarman and the COR Plaintiffs (the "Sugarman Relationships") to take actions

26             adverse to the Sugarman Entities and Plaintiffs' interests, that damaged Plaintiffs

27             as a direct and proximate result, and caused the Sugarman Relationships (and

28

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

13
**COMPLAINT**

Plaintiffs) to incur great unwarranted and unjustified expense. This harmed Mr. Sugarman and COR Plaintiffs and served Galanis' goal to retaliate against and harm Mr. Sugarman for his role cooperating with the government.

b. To have Windfall Defendants initiate short positions in Banc of California's stock.

c. To use the false statements and misleading information spread by the Aurelius Enterprise combined with manipulative trading tactics, and/or deceptive media strategies to further cause damage to Plaintiffs' reputations and to also cause the stock price of Banc of California to move artificially lower.

d. To coordinate the Windfall Defendants to purchase or conspire with others to purchase shares to cover their short position and realize windfall profits.

e. The Scheme also required the Defendants to conceal the names of Aurelius Defendants, Windfall Defendants, in coordination with each other (including Galanis), and to conceal the fact that they were publishing knowingly false and materially misleading information to prevent harm to their own reputations and businesses and the Defendants did conspire to do so.

62.    Galanis conspired with Aurelius Defendants from prison to furnish false and misleading information for publication by the Aurelius Enterprise.

63.    Defendants' use of the Aurelius Enterprise to distribute their false allegations, documents, and distortions was central to their conspiracy. For instance, Galanis would have lacked credibility if he sought to publish under his existing social media accounts, and he would have been unable to attract an audience if he set up a new account from which he sought to blog from jail. Instead, by joining the Aurelius Enterprise and ensuring that his participation in the Enterprise would not be revealed (in part because the Enterprise referred to him misleadingly as an anonymous whistleblower), he was able to conduct business for fraudulent purposes through

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

14

**COMPLAINT**

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1   the Aurelius Enterprise that spanned multiple social media platforms (as set forth below) and

2   Galanis was able to use the Aurelius Enterprise for racketeering activities to benefit all

3   Defendants collectively and individually by perpetrating their scheme through an association-in-

4   fact.

5          64.    Upon information and belief, Aurelius Defendants have used and continue to use

6   the Aurelius Enterprise for racketeering activities unrelated to Mr. Sugarman and Plaintiffs and

7   to defraud other companies and individuals.  Upon information and belief, one or more of the

8   Aurelius Defendants, whose identities the Aurelius Enterprise continues to seek to conceal, have

9   ties to organized crime and have faced allegations relating to fraud, including in both civil and

10  criminal actions, that constitute RICO predicate acts on numerous occasions by other companies

11  and by the government since the formation of the Aurelius Enterprise in 2015/16.  These include

12  allegations of wire fraud and mail fraud by several affiliates of public companies for publishing

13  knowingly false information with the intent to defraud through the use of interstate wire and/or

14  mail.  It also includes the several criminal fraud changes Galanis pled guilty to in 2016.

15         65.    The Aurelius Enterprise and individual Defendants continue to this day to make

16  and repeat the same false allegations, which they, Galanis, and others know (and have admitted)

17  to be false and materially misleading.

18         66.    In seeking unlawful profits, the Windfall Defendants conspired with Galanis

19  notwithstanding the fact that they knew Galanis did not control Mr. Sugarman, the COR

20  Plaintiffs, or Sugarman Entities as claimed by the Aurelius Enterprise, and they knew Galanis

21  was a serial convict with ties to organized crime in prison for committing fraud on several

22  occasions.

23  **The Defendants Conceal Their Roles and Identities**

24         67.    Defendants, individually and collectively, sought to hide their affiliations with

25  one another (including Galanis) by using, among other things, proxies, pseudonyms, anonymity,

26  deception, concealment, and other unfair business practices.  This included concealing, lying

27  about, and misrepresenting the Windfall Defendants' relationship with Galanis and each other in

28  communications relating to Mr. Sugarman, COR Plaintiffs, and Sugarman Entities, including in

docs-100162714.1

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1   public and private communications about allegations made against Sugarman to third parties.

2   68.   The Aurelius Defendants and Windfall Defendants concealed their affiliation with

3   Galanis and each other because public disclosure that they were working with Galanis and each

4   other would have undercut their scheme to distort the good name and reputation of Mr.

5   Sugarman and then to profit therefrom, would have damaged their own reputations, and would

6   have exposed them to significant liability.

7   69.   The Defendants knew concealment of their relationship with Galanis, as well as

8   their use of pseudonyms, anonymity, and undisclosed or inadequately disclosed trading activity,

9   prevented Mr. Sugarman, COR Plaintiffs and Sugarman Entities from promptly responding to

10   these claims to protect his reputation, the reputation and value of Plaintiffs, and Mr. Sugarman's

11   future employment and business prospects.

12   70.   Defendants also sought to conceal their involvement in the Aurelius Enterprise

13   including their relationships with each other and even the existence of their common enterprise,

14   through unfair business practices in order to protect their reputations and primary businesses

15   from suffering when the allegations were shown to be false and the common enterprise was

16   exposed.

17   71.   Defendants did not conceal their identities from other short sellers, select

18   journalists, or potential supporters of their Scheme.  Instead they primarily sought to conceal

19   their identities from those who they sought to defraud as the concealment of their identities was

20   primarily necessary for the fraud to achieve its goals.  Therefore, Aurelius Defendants were not

21   anonymous to one another, Windfall Defendants, institutional traders, certain market

22   participants, short sellers, or other enablers.

23   72.   Defendants' unfair competition and unfair business practices enabled them to

24   create the false appearance of independent validation for their allegations, and to conceal their

25   manipulative trading activities from vendors, third parties, and other regulated entities such as

26   broker dealers, banks, and their limited partners (e.g., to prevent the filing of suspicious activity

27   reports for manipulative trading practices) to further their fraud.

28   73.   The fact that stock and options trading in Banc of California, online comments

16

**COMPLAINT**

1  and posts, and other racketeering activity were coordinated and part of a common scheme was

2  not disclosed and was intended to allow the Windfall Defendants to reap greater profits through

3  deceptive practices in their effort to harm Mr. Sugarman's reputation and employment as well as

4  the business prospects, enterprise value, and reputation of COR Plaintiffs.

5       74.    On information and belief, the Aurelius Defendants sought to pressure (or help

6  facilitate) third parties to take negative actions against Mr. Sugarman, including seeking his

7  removal from various employment positions.  As in more traditional racketeering activity, this

8  included both threats and intimidation tactics for those who resisted – such as the spreading of

9  negative stories with market participants, whistleblowers, and journalists (including the Los

10  Angeles Times and Bloomberg) and withholding negative information that would impeach their

11  claims, and protecting those who cooperated or acquiesced.

12       75.    Defendants have continued to peddle in lies and conceal their partnership with

13  Galanis as their co-conspirator and partner in the fabrication of these lies in order to further their

14  racketeering activities and unfair business practices, including to conceal their unlawful

15  activities.  In fact, the identities of several co-conspirators and members of Defendants' joint

16  venture have yet to be identified by Mr. Sugarman and will require further discovery for

17  identification as John Does.  In other litigation, unknown members of the Aurelius Enterprise

18  hired counsel to appear for them to prevent discovery that could result in revealing their names

19  or their communications with the Defendants. Therefore, the identity of these defendants are

20  currently not known to Plaintiffs, despite the exercise of reasonable efforts to obtain the identity,

21  and such information can only be obtained in discovery in this action at which time Plaintiffs

22  will seek to add them as parties in place of the "John Doe" designations, if appropriate.

23  **Effect of the Scheme on the Plaintiffs**

24       76.    At the inception of Defendants' scheme, Mr. Sugarman had a strong reputation,

25  strong business prospects, a distinguished track record of business success, and was recognized

26  by the California Reinvestment Coalition and the National Diversity Coalition as the "Gold

27  Standard" in corporate social responsibility.  COR Plaintiffs also were highly respected firms

28  experiencing record profitability and strong business prospects.  Sugarman Entities also were

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

benefitting from Mr. Sugarman's and COR Plaintiff's strong reputation, management expertise, relationships, and strategic contributions.  For instance, under Mr. Sugarman's leadership Banc of California was recognized by Forbes Magazine as one of America's Top Banks and by Fortune Magazine as one of America's fastest growing companies.  Mr. Sugarman was therefore highly compensated for his services to Sugarman Entities and highly sought after for his services.

77.     Today, due to Defendants' persistent attacks, Mr. Sugarman and COR Plaintiffs have suffered irreparable harm.  For instance, Mr. Sugarman's ability to continue to positively impact the success and profitability of Sugarman Entities – such as through his ongoing employment as Chief Executive Officer – has resulted in significant economic damage to Mr. Sugarman and COR Plaintiffs and damage to his reputation, employment, and future business prospects.

78.     As Mr. Sugarman has attempted to vindicate his reputation and demonstrate the falsity of the campaign being waged against him, he has continued to face a coordinated, ongoing campaign of harassment, false accusations (publicly by means of the internet and privately to plaintiffs' attorneys, and other stakeholders in the business community), and reputational attacks.  Defendants also have inappropriately sought to dissuade Mr. Sugarman from continuing his pursuit of vindication and the remediation of the damages he had suffered through ongoing unfair business practices designed to continue to harm his integrity, reputation, counterparty relationships, business opportunities, and financial condition.

79.     Plaintiffs bring this action to vindicate their reputations, to recover damages suffered as a direct and proximate result of the Defendants' actions and continuing egregious wrongdoing, and to bring an end to Defendants' years-long illegal misconduct.

**The Scheme**

80.     On information and belief, Aurelius Defendants and the Aurelius Enterprise initiated their scheme to distort the good name and reputation of Mr. Sugarman and then to profit therefrom during the third quarter of 2016 and induced additional Defendants to join their fraudulent scheme through 2017.

docs-100162714.1

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

81.     The Aurelius Defendants knowingly conspired with Galanis following Galanis' imprisonment and Galanis' learning of Mr. Sugarman's cooperation with the government. Galanis joined the Aurelius Enterprise from prison for the purpose of retaliating against Mr. Sugarman by facilitating the Aurelius Enterprise's ability to knowingly make false statements about Mr. Sugarman that Galanis knew to be false and misleading at the time.  On information and belief, Galanis sought to and did join the Aurelius Enterprise to further his goal of retaliating against Mr. Sugarman and harming Mr. Sugarman and COR Plaintiffs by joining with the Aurelius Enterprise in publishing information he knew to be false and misleading for the purpose of defrauding readers of the statement and harming Mr. Sugarman unfairly.  Meanwhile, Galanis conspired with the other Aurelius Defendants in order to improve their ability to attack Plaintiffs' reputation and business prospects, and to generate unlawful windfall profits for the Windfall Defendants.  The Windfall Defendants also knowingly profited from Galanis' decision to join the Aurelius Enterprise and its racketeering activities to the detriment of Mr. Sugarman.

82.     The Aurelius Defendants coordinated, communicated, and/or directed the Aurelius Enterprise to launch a series of coordinated attacks on Mr. Sugarman beginning the second half of 2016.  This included the decision to draft and publish a blog on the Aurelius Enterprise's seekingalpha.com account on October 18, 2016 at 12:40 pm Eastern Time (the "Initial Blog Post") to attack Mr. Sugarman, the COR Plaintiffs, and the Sugarman Entities.  The Aurelius Defendants elected to conceal their identities and role in the blog and to publish it on a platform with no editorial controls for accuracy or authenticity.

83.     The Initial Blog Post claims were false and misleading in that it alleged that Galanis controlled Mr. Sugarman and entities affiliated with Mr. Sugarman including COR Plaintiffs and Sugarman Entities.  The Initial Blog Post was a public attack intended to destroy Mr. Sugarman's reputation, career, contractual relationships, and business prospects as well as the reputation, business and value of COR Plaintiffs and the Sugarman Entities.  It harmed Plaintiffs by deceiving readers who were the Sugarman Relationships into taking actions and incurring expenses to protect themselves from the false allegations that they were deceived into believing, into ceasing to do business with Sugarman and/or the COR Plaintiffs, or into changing

**COMPLAINT**

docs-100162714.1

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

deal terms to the detriment of Sugarman and/or the COR Plaintiffs. These expenses incurred by the Sugarman Relationships, attributable to the Aurelius Defendants' actions and unfair business practices, were also either passed on to Plaintiffs for reimbursement or were also incurred by Plaintiffs in the form of significantly higher due diligence and legal fees from potential and existing counter-parties, existing banks, and other regulated entities doing business with Plaintiffs. It also enabled Windfall Defendants to drive down the stock price of Banc of California to generate windfall profits.

84. The Initial Blog Post made several other claims that Defendants knew to be false. For example: (a) "Jason Galanis controlled COR, Banc's Founding Shareholder"; (b) "Steven Sugarman's COR and Jason Galanis control the Same Offshore Insurance Company"; (c) "Jason Galanis [controlled] an offshore insurance company that was simultaneously owned by COR Capital, an entity ostensibly led by Steven Sugarman"; (d) that there was a significant risk that "notorious criminals gained control over the $10 Billion taxpayer guaranteed Banc of California," making Banc "uninvestible"; and (e) numerous other false and misleading statements. In fact, Aurelius Defendants and Galanis all knew that Galanis never exercised any control over Mr. Sugarman, COR Plaintiffs, or Sugarman Entities, nor did Galanis even ever own a single share of stock or membership interests in any of those or any of Mr. Sugarman's businesses.

85. Galanis has admitted that he knew that the Initial Blog Post was false and misleading at the time of its publication, and Galanis nonetheless participated in the Aurelius Enterprise to facilitate its scheme knowing that he was facilitating the publication of false and materially misleading allegations against Mr. Sugarman and the COR Plaintiffs. The Aurelius Enterprise and Aurelius Defendants have concealed Galanis' participation in the Aurelius Enterprise and continue to conceal it today. This is an unfair business practice designed to harm Mr. Sugarman, COR Plaintiffs, and their businesses and deprive them of their property interests and money. In fact, the Aurelius Enterprise has affirmatively lied about Galanis' identity and concealed his participation in the Aurelius Enterprise when describing the source of the Aurelius Enterprise's information in its publications to further their scheme to defraud.

86. The Aurelius Defendants knew of Galanis' personal involvement in the Aurelius Enterprise, that he had been convicted of fraud, that the Introduction to COR Capital document was fraudulent, that he knew the claims in the Initial Blog Post to be false, unfair and misleading, and nonetheless the Aurelius Enterprise continued to repeat the claims, use false, fraudulent, and/or misleading documents from Galanis to seek to portray as true claims they knew to be false, and conceal the fact the Galanis was part of the Aurelius Enterprise and a source of the information provided.

87. The Aurelius Enterprise did not accurately disclose the knowledge of its co-conspirator Galanis that documents it used were misleading due to the fact that they were manipulated, forged, counterfeit, and/or created for the express purpose of being used to defraud third parties by Galanis. The Aurelius Enterprise intentionally used statements in its blog that were false and/or omit information necessary to disclose to not make them materially misleading.

88. The Aurelius Enterprise used and relied on a document called "Introduction to COR Capital" that they knew to be false. The document was plagued with dozens of errors that were exposed by even the most basic diligence, including, but not limited to, assertions that: COR Capital and/or Mr. Sugarman did business with or financed Michelle Morton and/or companies associated with her; that COR Capital was "New York based", that COR Capital was a "control" investor in Banc of California, that COR Capital had a portfolio investment in the "mutual fund business", that COR Clearing and/or Mr. Sugarman invested in an entity called "Cor Fund Advisors", that COR Capital and/or Mr. Sugarman invested in or controlled "a Bermuda-based property and casualty insurer, New Olympic Re Ltd", that Mr. Sugarman owned an entity called "Wealth-Assurance AG", that Mr. Sugarman was the "CEO of COR Clearing", that members of Banc's Board of Directors and Banc's Senior Advisor were potentially involved in Galanis' scheme, and that Officers and Directors of COR Securities and COR Clearing (many of whom were referenced with inaccurate titles and out of date information) were potentially involved in Galanis' scheme.

89. The Initial Blog Post's central claims were false and misleading as to Sugarman, COR Plaintiffs, and Sugarman Entities, and were known by Galanis, the other Aurelius

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

Defendants and the Windfall Defendants to be false and/or were known by each Defendant to be published with reckless disregard for their truth or falsity at the time that the Initial Blog Post was published. Publication of these statements were made by using the electronic wire system and constitute wire fraud.

90. Prior to the publication of the Initial Blog Post, the Windfall Defendants established massive short positions on Banc of California stock that would earn them millions of dollars in illicit profits if the stock dropped.

91. Shortly after the publication of the Initial Blog Post, the Aurelius Enterprise used its Twitter Account to continue to mislead the public by sending deceptive public tweets. For example, a public tweet with a link of the blog from the Aurelius Enterprise's account was sent to the attention of Defendant Muddy Waters Research and sought to falsely, deceptively, and fraudulently deceive readers into believing that Muddy Waters: was previously unaware that the Aurelius Enterprise was planning to publish the blog, had no role in drafting or editing the blog, had not previously seen the blog and was not aware of its contents, was not a part of the Aurelius Enterprise, did not short Banc of California stock prior to and in anticipation of the blog, was just learning of the information in the blog for the first time, and was not already beginning to cover its short position immediately following the issuance of the blog. In fact, the tweet from the Aurelius Enterprise's twitter account to "@MuddyWatersre" (the Twitter account for defendant Muddy Waters Research) was intentionally deceptive and misleading and therefore constituted an unfair business practice.

92. The Aurelius Enterprise, the Defendants and others in coordination with the Defendants, including non-party Rota Fortunae, posted numerous comments, tweets, posts and other items on social media sites and, on information and belief, sent numerous direct messages to one another and third parties and other communications as well as provided interviews including on and after October 18, 2016. Several of these posts were false or intentionally deceptive and constituted unfair business practices.

93. On information and belief, Aurelius Defendants and/or Galanis have continued to harm Plaintiffs by means of wire fraud through repeating its Scheme on multiple occasions

1   including during periods leading up to and including October 20-24, 2016, and January 30, 2017

2   periods, and making ongoing false statements to increase the economic losses suffered by the

3   Plaintiffs.  This increased the damages suffered based on each new act of wire fraud committed

4   by the Aurelius Enterprise.

5          94.     Windfall Defendants sought to profit repeatedly as part of the Aurelius Enterprise

6   scheme against Sugarman.  Defendants each sought to, and did, conceal the existence of their

7   common enterprise, their involvement in the common enterprise, and Galanis' involvement from

8   prison in the enterprise through false statements, concealment and deception.  These unfair

9   business practices were designed to delay Mr. Sugarman's and COR Plaintiffs' ability to

10  effectively counter the false allegations and enabled Defendants' to protect their reputations and

11  primary businesses from suffering if the allegations were ultimately shown to be false and the

12  common enterprise was exposed.

13         95.     The enterprise is on-going.  As recently as 2019, Galanis, from prison, and other

14  Aurelius Defendants have continued to make false statements and to take discreet acts designed

15  to further the harm to Plaintiffs in furtherance of the Aurelius Enterprise Scheme.  This is

16  resulting in significant ongoing harm that would not have been incurred had Aurelius Defendants

17  and Galanis not provided, and continued to provide, the false and misleading information.

18         96.     Defendants' scheme involved them using an on-going series of public and private

19  attacks against Mr. Sugarman's reputation and business in order to both profit from its effect on

20  Banc of California's stock, achieve Galanis' goals of retaliation, and to cover their tracks by (i)

21  disseminating false and misleading information, (ii) hiding and concealing material information,

22  and (iii) engaging in other unfair practices.

23         97.     Defendants' scheme to distort the good name and reputation of Mr. Sugarman and

24  then to profit therefrom included the practice of spreading unverified bad news about a stock

25  with the objective of panicking other investors into selling their stock to drive down the price,

26  allowing the short sellers to profit. In this case, the *unverified bad news* was all calculated to

27  attack Mr. Sugarman and the COR Plaintiffs and their reputations, brands, and businesses with

28  false information.

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

98.     The Aurelius Enterprise publishes allegations of wrongdoing against public companies and their executives with the intent of causing harm to the reputations of the subjects of the allegations.  Since 2015, the Aurelius Enterprise's allegations have consistently been called false, misleading, and fraudulent; have been proven false by independent investigations; and have resulted in several claims of wrongdoing against the Aurelius Enterprise and its conspirators.

99.     On information and belief, Aurelius Defendants used documents, citations, and information gathered from Galanis, directly and indirectly, to create false and intentionally misleading papers, blog posts, websites, and other material to support or serve as the basis for several separate attacks on Mr. Sugarman and the COR Plaintiffs, as well as the Sugarman Entities (the "Attacks") from no later than October 2016 until the present.   The Attacks fraudulently claimed that Sugarman and the COR Plaintiffs had material business partnerships with Galanis and were involved in his financial crimes.

100.     The Aurelius Enterprise then shared the information underlying and constituting the Attacks with journalists, regulators, and others – seeking to induce independent third parties into distributing Aurelius Enterprise's false and misleading claims, to deceive Sugarman Relationships into taking adverse actions with respect to Sugarman, or to take other action detrimental to Mr. Sugarman and COR Plaintiffs.  The Aurelius Defendants communicated via internet and telephone with the LA Times and others including, upon information and belief, at least one of the real names of the members of the Aurelius Enterprise.

101.     On information and belief, the Aurelius Defendants collaborated to draft Blog posts, compile reports, create websites, and, collect documents.  The Windfall Defendants simultaneously conspired to create a comprehensive plan to profit from untrue allegations which the Aurelius Defendants distributed to damage Plaintiffs' reputations and financial prospects while also allowing the Windfall Defendants to profit when the price of the Banc stock fell.

102.     On information and belief, Aurelius Defendants all contributed to and worked together to conduct the affairs of the Aurelius Enterprise and participate in its operations and management, including coordinating and/or directing the development, drafting, research and/or

docs-100162714.1

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1   sources for the publications and communications of the Aurelius Enterprise; shorting Banc of

2   California stock in coordinated and consistent fashion with other Defendants, co-conspirators

3   and participants in the Aurelius Enterprise, contributing to and investing resources in the

4   Aurelius Enterprise, its racketeering activities and its schemes, and amplifying the allegations,

5   claims and messages published by the Aurelius Enterprise and helping it to attract a larger

6   audience and an audience with the ability to increase the impact and success of its scheme.

7      103.   The Defendants' unfair business practices were designed to prevent the Sugarman

8   Relationships from accurately assessing the credibility of the Aurelius Enterprise's claims and to

9   delay Mr. Sugarman's, COR Plaintiffs', the Sugarman Relationships' and other's ability to

10  effectively counter and prove false the false allegations.  It also enabled Defendants to protect

11  their reputations and affiliated businesses from suffering competitive harm and reputational

12  damage when their allegations were ultimately shown to be false and/or when the common

13  enterprise was exposed.

14     104.   The Defendants' actions in concealing their identities also furthered the Aurelius

15  Enterprise's wire fraud in a similar way by preventing the Sugarman Relationships from

16  evaluating the credibility of the Aurelius Defendants, including Galanis.  Thus, the concealment

17  of the identities of the Aurelius Defendants allowed the Aurelius Defendants to induce

18  independent auditors, directors, clients, counterparties, and vendors to Mr. Sugarman, COR

19  Plaintiff's, COR Entities, all of whom were among the Sugarman Relationships, to take actions

20  detrimental to Mr. Sugarman, COR Plaintiffs, and Sugarman Entities in a way that they would

21  not have been able to do had the Aurelius Defendants' identity been known.  In fact, the Aurelius

22  Enterprise misstatements coupled with the concealment of their identities caused the Sugarman

23  Relationships to rely on those misstatements and taken actions thereupon which they would not

24  have otherwise taken, and indeed would not have believed to be in their best interest to take, if

25  they had known the identities of the Aurelius Defendants, and if they had known the statements

26  by the Aurelius Defendants were false or materially misleading (i.e., not truthful).  Further,

27  counterparties and clients of COR Securities and COR Clearing, each of whom were also among

28  the Sugarman Relationships, made decisions to the detriment of Sugarman and the COR

1   Plaintiffs that they would not have otherwise made also based on the Aurelius Enterprise's

2   racketeering activities.

3       105.   On information and belief, Defendant Gibson has served as a direct source for

4   articles about Mr. Sugarman, COR Plaintiffs, and Sugarman Entities published by the Los

5   Angeles Times and others relating to the Aurelius enterprise.

6       106.   On information and belief, Defendants collaborated to draft Blog posts, compile

7   reports, create websites, collect documents, and/or create a comprehensive plan to profit from

8   untrue allegations published to damage Plaintiffs' reputations and financial prospects while also

9   allowing Defendants to profit when the price of the stock fell.

10      107.   On information and belief, Block, Muddy, Gibson, Castalian, and the Matthew

11  Parties, all contributed to and worked together to conduct the affairs of the Aurelius enterprise

12  and participated in its management, including contributing to and investing resources in the blog,

13  the strategy and the common enterprise, in at least the following ways:  collaborating on the

14  drafting, editing, development and/or distribution of the Initial Blog Post; shorting the stock

15  short prior to the publication of one of more of the Blogs, and covering their shorts upon or

16  shortly after the publication of the respective Blog posts.

17      108.   Defendants' scheme was conducted as an open-ended scheme of racketeering

18  activity, the implementation of which included up to two main components of racketeering

19  activity and wire fraud. The Defendants' conducted the Scheme with respect to Mr. Sugarman on

20  multiple occasions including the periods leading up to the following Aurelius Enterprise

21  publications:  October 18, 2016; October 20-24, 2016; and January 26, 2017.

22  **The Implementation of the Scheme**

23      109.   Upon information and belief, in the few days immediately prior to the publication

24  of the Initial Blog Post, there was a substantially higher than normal volume of short sale activity

25  in Banc of California stock that included the purchase of an abnormal volume of put option

26  positions on the Banc of California's stock.  This activity was the result of Windfall Plaintiffs

27  building a massive short position in anticipation of the issuance of the Initial Blog Post on

28  October 18, 2016 pursuant to the Scheme.  In fact, leading up to October 18, 2016, Banc of

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

docs-100162714.1

California's stock was among the most heavily shorted stocks. The volume of short sales in Banc of California stock spiked in the days prior to the Blog's publication, doubling from 7.0% in mid-September to 13.2% in the days just before the Blog was published.

110.    This type of extraordinarily timed trading is consistent with the trading patterns identified in other improper trading schemes – especially those tied to manipulative trading related to blogs posted on the Seeking Alpha website and related Twitter posts.  On information and belief, it is also consistent with the same modus operandi the same Defendants have used in other similar schemes to manipulate other public company stocks for illicit profits.

111.    Pursuant to the pre-arranged conspiracy among and between the Defendants, Defendants knew the claims in the Initial Blog Post were false and would cause Mr. Sugarman grave reputational harm as to which money damages may be an insufficient remedy.

112.    Publicly available data shows that in early October, put options traders were entering one or two hundred put options in Banc stock per day. This pattern drastically changed in the week immediately prior to the publication of the Initial Blog Post as, upon information and belief, the Windfall Defendants began to take large positions in anticipation of attacking Mr. Sugarman.  During that week, the volume of put options trades increased to nearly 2,000 per day. On October 17, 2016, the day before the Blog, the put-call trading volume ratio in Banc stock spiked, with trading volumes in put options reaching 300 times the volume of call options.

113.    On information and belief, the Windfall Defendants were directly responsible for the increase in short sales and put option purchase activity during October 2016 prior to the Aurelius Enterprise's Initial Blog Post.

114.    Defendants Carson Block and Muddy Waters admitted to having used anonymous blogs in the past, including on seekingalpha.com, to conceal their identity and involvement in publications that smeared third parties. An example of this practice is the creation of the account Dupre Analytics' Blog on seekingalpha.com and the creation and use of the alias Dupre Analytics to conceal Muddy Waters' identity relating thereto.

115.    On information and belief, Muddy Waters, Carson Block, Gibson, Castalian and the other Aurelius Defendants coordinated. operated and directed the social media account

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1  (including the legal disclaimers published with respect to the blog and social media account)

2  used by the Aurelius Enterprise.  In fact, the Aurelius Enterprise's disclaimer appended to the

3  Initial Blog Post was updated in 2018 – approximately two years after the publication of the blog

4  – to reflect the more robust disclaimers used by Muddy Waters in 2018 following the receipt of

5  subpoenas from Mr. Sugarman by the Aurelius Defendants. The Aurelius Enterprise has

6  admitted that it is aware of and closely following legal processes relating to Muddy Waters,

7  Castalian, Matthews Parties and other Aurelius Defendants and Windfall Defendants in order to

8  attempt to continue to conceal the identities of the Aurelius Defendants and their coordination,

9  collaboration, and involvement in the Aurelius Enterprise.  Aurelius Defendants and Windfall

10  Defendants have coordinated on their legal strategies to evade discovery, to conceal each other's

11  identities, to conceal their relationships with one another, and to hide detection of their

12  wrongdoing. On information and belief, based on court representations made by one or more

13  Aurelius Defendants, the Aurelius Defendants are in possession of voluminous communications

14  and documents relating to Mr. Sugarman, COR Plaintiffs, and Sugarman Entities which would

15  disclose the identities of other Aurelius Defendants (John Does 1-10) and Windfall Defendants

16  (John Does 11-20) and that include communications with market participants, regulators,

17  lawyers, and others.  In fact, several Aurelius Defendants and Windfall Defendants have

18  conspired to raise legal claims on behalf of other Defendants who are part of the Aurelius

19  Enterprise in furtherance of their joint conspiracy.

20  116.   KBW's institutional sales trader Defendant Kealy is a Windfall Defendant by

21  virtue of his coordination of the Windfall Defendant's trading in Banc of California stock to

22  facilitate the Scheme and conceal the coordination, identities, collaboration, and racketeering

23  activities of the Defendants.  Kealy profited from providing these services to the other

24  Defendants.  In fact, Kealy has admitted in text messaged that he was "short it [Banc of

25  California stock in] a bunch of systemns [sic]" in advance of the Initial Blog Post.  This meant

26  that he had solicited and/or executed trades for a number of his accounts to take or increase short

27  positions in Banc of California stock in anticipation of Aurelius' Blog post.  Further, Defendant

28  Kealy coordinated with traders at other Wall Street brokerage firms including those that executed

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

trades for Muddy Waters and other Windfall Defendants. For instance, KBW coordinated trading through Defendant Bjorkedal at FIG Partners' – an executing broker for Muddy Waters' trades in Banc of California.  This coordination by KBW helped Windfall Defendants coordinate their trading in Banc as part of their scheme while concealing the conspiracy by using intermediaries to communicate, coordinate, and conspire to further the Aurelius enterprise.  On information and belief, KBW profited from its facilitation of the Defendants' unfair practices and illegal enterprise by front running the publication of the Aurelius Enterprise's Blog by shorting Banc of California stock for its own account, by generating revenues as an executing broker, and in other ways.

117.    On information and belief, Muddy Waters contributed to the blog, was aware when it would be published prior to its publication, and has a history of publishing allegations to support his short trades through faux entities that pretend to be independent research entities while concealing Muddy Waters' relationship to them as well as the fact that Muddy Waters was actively trading the stock of the company that was the subject of the research at the time of the publication.  These practices are currently subject to separate litigation relating to fraudulent and other unfair practices by Muddy Waters.

## DISTORT AND ATTACK LEADING TO DAMAGES

118.    Defendants executed a sophisticated plan to lie, to mislead, to distort public information, and to package fraudulent and manipulated documents concerning Mr. Sugarman, COR Plaintiffs, and Sugarman Entities.  They did so expressly in order to retaliate against Plaintiffs, damage Plaintiffs' business prospects, harm Mr. Sugarman by causing loss to his business and property, and profit thereby.

119.    The Aurelius Enterprise sought to and did defraud and continue to defraud members of the public, a discrete group of individuals or entities that include service providers, vendors, clients, partners, employees, counter-parties, regulators, and others who do or did business with Mr. Sugarman (defined above as the "Sugarman Relationships"), COR Plaintiffs and/or the Sugarman Entities as well as others who were defrauded by the Aurelius Enterprise as alleged herein.  Plaintiffs were damaged when the Sugarman Relationships, in reliance on the

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL.: (213) 943-1444 FAX: (212) 278-1733

Aurelius Enterprise's knowingly false allegations against Mr. Sugarman, COR Plaintiffs and Sugarman Entities, severed ties with Mr. Sugarman and his affiliated companies, harming their relationship with Mr. Sugarman, terminated business agreements or opportunities, changed employment or business relationships (e.g., moving clearing firms), or otherwise as a direct and proximate result of Defendants' conduct. The Sugarman Relationships took actions and incurred costs they otherwise would not have taken based and/or as a result of Defendants' conduct. The fallout with the Sugarman Relationships from the publication of the false and misleading information included the following:

a. One of the banks holding Mr. Sugarman and COR Plaintiffs' bank accounts closed the accounts as a direct and proximate result of the Aurelius Defendants' actions. This caused damage to Plaintiffs both reputationally and professionally and to the operation of Plaintiffs' businesses;

b. The sales price in connection with a major asset of Plaintiffs was reduced by approximately $40M in the wake of the Aurelius Defendants' actions and as a result, both direct and proximate, Plaintiffs were damaged in an amount of not less than $40M due to the unfair business practices and deceptive and fraudulent behavior of the Aurelius Defendants;

c. Letters of intent for ongoing business combinations, acquisitions, and other deals were cancelled based on the continuing attacks and the resulting diligence questions relating to the Blog posts;

d. Access to credit for Sugarman owned companies became significantly constrained when other commercial banks and lending institutions terminated access to Warehouse Lines of credit because of the due diligence concerns directly related to the Aurelius Defendants' on-going actions;

e. Access to investment capital for new ventures was significantly constrained when large banks and other investors declined to make capital available as a direct and proximate result of the Aurelius Defendants' actions;

f. Enhanced due diligence required by counter-parties for Sugarman related

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

investments at great additional cost to Plaintiffs, all as a direct and proximate result of the Aurelius Defendants' actions; and,

g.  The loss of executive job opportunities for Mr. Sugarman as a direct and proximate result of the Aurelius Defendants' actions.

120.  The decisions and actions made by the Sugarman Relationships, based upon their reliance upon the misstatements of the Aurelius Defendants, in turn, harmed COR Securities and COR Clearing, by causing them to (i) incur significant expenses to respond to inquiries based on the allegations in the Initial Blog Post, (ii) lose clients, (iii) lose strategic relationships, (iv) lose potential acquisition partners, (v) and suffer other damages as outlined below.  None of the harmed parties, including the Sugarman Relationships defrauded by the Aurelius Enterprise, are claiming any harm or damages as a result of the purchase or sale of any securities in connection with the false statements (and most did not even own any securities).  As a direct and proximate result of the Aurelius Enterprise's publication of knowingly false and misleading information regarding Mr. Sugarman and the Sugarman Entities, the Sugarman Relationships were defrauded into taking actions detrimental to Mr. Sugarman and the COR Plaintiffs, and as a direct and proximate result thereof, Mr. Sugarman and the COR Plaintiffs suffered substantial damages.

121.  Indeed, Mr. Sugarman and COR Plaintiffs experienced significant, foreseeable damages, including to their businesses and property, as a direct consequence of the wire fraud and other racketeering activities committed by the Aurelius Enterprise.  For example, the value of COR Securities, which was being marketed for sale at the time, was dramatically impaired by at least $40 million dollars directly as a result of the Aurelius Enterprise's racketeering activities, and Mr. Sugarman and COR Plaintiffs suffered significant other damage to their property and business.

122.  In the years after October 18, 2016, several law firms investigated claims published in the Aurelius Enterprise's Initial Blog Post and concluded that they were false.  COR Plaintiffs, COR Securities, COR Clearing, Banc of California, Mr. Sugarman, and Mr. Sugarman's entities were never controlled by Galanis (as the Aurelius Defendants knew at the time of the publication of the Initial Blog Post); in fact, Mr. Sugarman had no communication

1    with Galanis for nearly two years prior to the publication of the Initial Blog Post.

2         123.    By the time the truth came out, it was too late.  Mr. Sugarman's reputation and

3    that of his companies were harmed and the Windfall Defendants had exited their positions for a

4    massive multi-million dollar profit.

5         124.    The Aurelius Enterprises Fraud was therefore the direct and proximate cause of

6    the harm to Mr. Sugarman and COR Plaintiff's business and property including losses suffered

7    to the value of COR Securities, COR Capital, COR Advisors, and well as expenses Plaintiffs

8    were forced to incur, legal costs they were subjected to, the termination of employment, damage

9    to business prospects, and other damages as set forth herein or to be proven at trial.

10        125.    Defendants' social media and other communications activity including

11   encouraging social media activities about the Aurelius Enterprise's blog posts by others

12   (including by Castalian Partners, James Gibson, Matthews Parties and others) was part of

13   Defendants' coordinated scheme to amplify the false statements published by the Aurelius

14   Enterprise and to further the work of the Aurelius Enterprise, including to harm Plaintiffs.  This

15   activity included but was not limited to, Rota Fortunae retweeting the Initial Blog Post on that

16   day; Rota Fortunae tweeting on that day that "BANC stock still way to [sic] high.  Galanis

17   involvement deserves significant discount to book value."; Aurelius Tweeting and Rota Fortunae

18   retweeting that "[w]hile touting "community reinvestment" $BANC senior-most officers [Mr.

19   Sugarman] financed Jason Galanis", Aurelius Tweeting and Rota Fortunae retweeting that

20   "Senior-Most Officers and Directors [again by implication including Mr. Sugarman] have

21   extensive and indisputable ties to Jason Galanis."

22        126.    On information and belief, Windfall Defendants also conspired to spread

23   allegations to third party Wall Street investment banks, Banc investors, short sellers, corporate

24   governance consultants, advisory firms, and others to investigate Banc of California and to put

25   direct and indirect pressure on Sugarman Relationships to take adverse action against Plaintiffs.

26        127.    On information and belief, the Aurelius Enterprise arranged for Mr. Sugarman

27   and his family to be surveilled at home and work, including surveillance of his young children.

28        128.    Following the publication of the false attacks on Sugarman, the price of the stock

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

32
**COMPLAINT**

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1   dropped.  On information and belief, this stock price drop enabled the Aurelius Enterprise to

2   amplify its false allegations by bootstrapping an aura of credibility onto its otherwise false claims

3   and permitting them to further amplify their attacks on Sugarman and the COR Plaintiffs.

4          129.   The Windfall Defendants used the stock price drop (that they manufactured

5   through their false and misleading publications, together with other deceptive and unfair business

6   practices, such as concealing their relationship with each other and Galanis, and manipulative

7   trading tactics) to support the credibility of their claims in several ways:  (i) to provide interviews

8   to journalists, (ii) to increase Aurelius' followers on social media to enhance their ability to

9   conduct future attacks on Mr. Sugarman and others, and, (iii) to pursue follow up attacks on Mr.

10   Sugarman using additional false information derived directly from Galanis and his associates

11   while Galanis was imprisoned.

12         130.   Upon information and belief, Galanis and Windfall Defendants traded information

13   and documents used to further the Aurelius Enterprise through Direct Messages on social media,

14   another wire fraud violation, while Galanis was imprisoned.

15         131.   Multiple Defendants coordinated their posts on the internet and various social

16   media sites, including SeekingAlpha, Twitter, and other sites, to create a misleading impression

17   of negative investor sentiment concerning Mr. Sugarman without disclosing that the Defendants

18   were working in conjunction with one another and Galanis, and had planned their attack on Mr.

19   Sugarman and his companies as part of a broader scheme.

20         132.   Upon information and belief, Muddy Waters Research and Carson Block sell for

21   profit a newsletter and various social media communications relating to Muddy's short positions.

22   Muddy and Block also appear on television, YouTube, and other platforms to promote their

23   business and generate a following for their paid services and to enhance their influence in the

24   marketplace.  However, Muddy Waters elected **not** to disclose its trading in Banc stock.  On

25   information and belief, this abnormal decision was made because they knew the information was

26   false and misleading and they did not want to harm their reputations and influence in the

27   marketplace by being associated with it.  In contrast, they knew that Mr. Sugarman's reputation

28   would suffer irreparable harm and the Sugarman Relationships would be defrauded due to this

1   false information but they didn't care and proceeded anyway.

2   **TO COVER THE SHORT**

3       133.    Based on information and belief, Windfall Defendants covered their short

4   positions in Banc stock shortly after the Initial Blog Post was published and reaped millions of

5   dollars of profit in the process.

6       134.    In order to conceal their unfair and anti-competitive trading behavior, Defendants

7   coordinated their trades and the trading of other market participants through Wall Street trading

8   desks and brokers including KBW and FIG Partners. This concealed the interactions between

9   Defendants, limited direct communications, and obfuscated the coordination of trading to hide

10  the market manipulation of multiple traders timing their trades with one another.

11      135.    Upon information and belief, KBW and FIG Partners are purportedly competitors

12  and do not coordinate trading recommendations for clients with one another, do not front run

13  their client accounts or provide confidential client information to their competitors, or make

14  recommendations to clients contrary to their research analysts opinions. However, on

15  information and belief, KBW's broker Defendant Kealy and FIG broker Defendant Bjorkedal

16  joined the Defendants' scheme to distort the good name and reputation of Mr. Sugarman and

17  then to profit therefrom and conspired with one another and their clients (including some

18  Defendants) to manipulate Banc of California stock for profit.

19      136.    Upon information and belief, on October 18, 2016 Defendant Kealy of KBW and

20  Defendant Bjorkedal of FIG Partners texted with each other and had phone calls with each other.

21  These communications demonstrate the following: they were coordinating their trading and that

22  of their clients as part of a common scheme; they were aware in advance of the imminent

23  publication of the Blog attacking Mr. Sugarman, COR Plaintiffs and Sugarman Entities; they

24  coordinated the timing of their purchase orders to cover their shorts including by holding off on

25  covering initially at the other parties' direction; and there was a scheme common to numerous

26  clients (which were referred to as "systemns" [sic]) to participate in the scheme.

27      137.    On information and belief, Windfall Defendants each initiated short options

28  positions in Banc of California stock on multiple occasions (for themselves or their clients) prior

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1    to the publication dates of other Aurelius Enterprise blog posts making false claims concerning

2    Mr. Sugarman, COR Plaintiffs and/or the Sugarman Entities.

3        138.    The Aurelius Enterprise published a blog and several other social media posts on

4    January 26, 2017 (the "Third Blog Post").  Among other things, in the Third Blog Post they

5    claimed that: Aurelius was contacted by "a whistleblower with a deep knowledge of Jason

6    Galanis' business dealings with the Sugarmans" who told Aurelius:  how "Jason Galanis'

7    ownership in regulated companies alongside . . .  Steven Sugarman . . .  was concealed from the

8    SEC, FINRA, and investors"; and that Banc under Sugarman had "engaged in mortgage fraud by

9    hiding bad loans in 'mortgage pools'";  Not only were these statements false, and known by the

10   Defendants to be false, but most egregiously Defendants hid the material fact that one of the

11   sources of these false statements was Galanis – whose identity they concealed and tried to pass

12   off as that of an independent whistleblower.

13       139.    In fact, claims including those outlined above have been investigated by

14   numerous parties each of whom has confirmed no wrong-doing by Sugarman.

15       140.    Upon information and belief, Galanis knew that the reference to a

16   "whistleblower" was in fact a reference to him – a fact concealed by Defendants to commit harm

17   against Mr. Sugarman and COR Plaintiffs and to commit wire fraud against others.  This

18   coordinated concealment also constituted an unfair business practice.

19       141.    Defendants also later posted an online comment claiming that the "whistleblower"

20   was not an insider and had no fiduciary duties to Banc of California – thereby acknowledging

21   that they were aware that Galanis (who was the referenced whistleblower) did not control Mr.

22   Sugarman, COR Plaintiffs, or Sugarman Entities, proving they knew their central allegations

23   were false.  Nonetheless, Defendants continued to make claims that Galanis controlled Mr.

24   Sugarman, COR Plaintiffs and Sugarman Entities even after the date they admitted their

25   "whistleblower" Galanis was not an insider or fiduciary to any of those entities.

26       142.    Defendants then published multiple false allegations including that Galanis had

27   ownership of COR Securities, Galanis was business partners with Sugarman or Sugarman

28   entities (including via ownership or control), and that Galanis received proceeds from Sugarman

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1   for his illicit activities.  All of these claims were false and known by Defendants to be false.

2   Again this is all supported by Defendants' continued hiding of the fact that their purported

3   "source" for these allegations was their co-conspirator and convicted felon, Galanis, who made

4   these claims from prison after having pled guilty for fraudulently making similar claims about

5   being affiliated with Sugarman as part of his fraud.

6       143.    The false allegations in the Third Blog Post were, upon information and belief, in

7   conformity with the ongoing coordinated scheme, were again spread by Aurelius Defendants,

8   Windfall Defendants, and others with whom Defendants, on information and belief, had a

9   relationship including Rota Fortunae in an attempt to give the coordinated scheme the

10  appearance of objectivity.  Thus on January 26, 2017, Rota Fortunae retweeted the Aurelius Blog

11  Post of that same day.  Rota Fortunae additionally published on January 26, 2017, upon

12  information and belief, in support of the coordinated scheme, a tweet alleging that "[a]pparently

13  mortgage fraud at $BANC is good news???".  Likewise, the next day, January 27, 2017, Rota

14  Fortunae published a false and misleading tweet implying Mr. Sugarman knew about this alleged

15  "mortgage fraud" and that caused "Sugarman [to] unload 121k shares the day he resigns... five

16  days before earnings".  On January 27, 2017, Rota Fortunae also falsely tweeted that the book

17  which Mr. Sugarman co-authored had a "forward by Jason Galanis".  All of the above tweets by

18  Rota Fortunae were false and were known to be false, and all were, upon information and belief,

19  published in further support of the ongoing coordinated scheme between the Defendants.

20      144.    Defendants also made the false claims in the Third Blog Post that Sugarman and

21  Banc of California falsely valued hundreds of millions of dollars of mortgage loans.  These

22  claims were also false.  Indeed, under Sugarman's leadership Banc sold the mortgage loan

23  portfolio weeks before Aurelius and Galanis made these claims, realizing a profit for Banc.

24  Instead of holding the mortgages, the Banc already had cash sitting in its account when the Blog

25  posted.  This resulted in the Blog's allegations being easily discredited and proved false when

26  earnings were reported on January 30, 2017.

27      145.    Notwithstanding the fact the Aurelius Enterprise's Third Blog Post published was

28  false, Banc of California's stock was nonetheless knocked lower during the trading day

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1  following the publication, and Sugarman's reputation was once again tarnished.

2      146.    Rota Fortunae, who had up to that point played a supporting role to amplify the

3  Aurelius Enterprise's claims, authored an article on seekingalpha.com entitled "Banc: An

4  Earnings Mirage – Price Target to $8 Per Share" that re-cycled many of Aurelius' prior false

5  claims and sought to support the Aurelius Enterprise's scheme to defraud independent regulators,

6  auditors, and directors of COR Plaintiffs and Banc to initiate expensive and burdensome

7  investigations based on allegations the Aurelius Defendants knew to be false.

8  **ON-GOING SCHEME AGAINST PLAINTIFFS – TO COVER THEIR TRACKS**

9      147.    As set forth above, Defendants, individually and collectively, have sought to

10 conceal their affiliations with one another (including Galanis) and their illegal acts by using,

11 among other things, proxies, pseudonyms, anonymity, deception, concealment, and other unfair

12 business practices.

13     148.    On October 18, 2016, the Aurelius twitter account sent a tweet to

14 "@MuddyWatersre" about "$Banc" which suggested that "Aurelius" was bringing its newly

15 published article to Muddy's attention.  However, on information and belief, Muddy had

16 coordinated with co-conspirators who were part of the Aurelius Enterprise on the Blog post in

17 advance, and Muddy and other Defendants had been trading in advance of the Blog being

18 published.  On information and belief, Muddy was already beginning to cover its short position

19 by the time "Aurelius" sent the tweet.  The tweet was intended to be, and was, misleading.  It

20 falsely suggested that Muddy and the Aurelius Defendants were not part of a joint conspiracy,

21 had not coordinated on drafting the Blog, and were independent of one another.  In fact, on

22 information and belief, Muddy had been coordinating with other co-conspirators who were part

23 of the Aurelius Enterprise prior to the publication of the blog and such communications would

24 reveal the names of additional John Does.  The Aurelius tweet was intended to deceive readers

25 into a false impression and in fact the purpose of the tweet was to deceive and defraud readers

26 and not for the benefit of MuddyWatersRe.

27     149.    Defendants knew concealment of their relationship with Galanis, as well as their

28 use of pseudonyms, anonymity, and undisclosed or inadequately disclosed trading activity

prevented market participants and others from properly assessing the credibility of their claims – which they knew to be false -- and the authenticity of several of their documents – which they knew to be forged or fraudulently manipulated.

150.   As set forth above, certain Defendants, upon information and belief, joined in the enterprise with their co-conspirators due to personal animus against Mr. Sugarman and non-monetary goals such as retaliation.  For instance, on information and belief, Galanis sought to retaliate for Sugarman's interview with the government.

151.   On October 20, 2016, two days after the publication of the Initial Blog Post, the Aurelius Defendants posted a further blog post through the Aurelius Enterprise on Seeking Alpha (the "Second Blog Post") which announced that Defendants would soon post thousands of documents relating to Plaintiffs on a new website, www.bancexposed.com.  It also reiterated the false position that through Sugarman and others, Galanis had control over Banc.  The Second Blog Post also questioned the independence of Banc's internal investigation over these purported ties.  The Second Blog Post continued to target Mr. Sugarman personally and attack him, including by harassing his wife and her family by adding numerous allegations relating to Mr. Sugarman's wife and her family's private business and activities from over a decade prior to the post and well before any affiliation with the Banc.

152.   The Second Blog Post, upon information and belief, was a joint work created by the Defendants -- who participated in its creation and writing and who jointly authorized its publication and distribution.  The purpose of the Second Blog Post was both to cover up the illegal, unfair, and deceptive activity in association with the publication of the false and misleading allegations in the Initial Blog Post and to attack Sugarman personally.

153.   Upon information and belief, Galanis was, in fact, a main source, directly and/or indirectly, for the documents that Aurelius was proposing to publish and later did publish on their newly launched website.

154.   On October 24, 2016, some six days after the publication of the Initial Blog Post and a mere four days after publication of the Second Blog Post, Defendants published thousands of pages of documents purporting to be related to Sugarman and COR Plaintiffs on a new

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

docs-100162714.1

1  website entitled Bancexposed.com (the "Aurelius Website").  On information and belief, the

2  documents were obtained primarily from Galanis personally and/or through his lawyer and/or

3  other Galanis associates outside of prison at Galanis' direction and included documents that were

4  forged, fraudulent, misleading, manipulated by Galanis and his associates, and documents that

5  Galanis and/or his associates created to deceive third parties and to create a false appearance of

6  affiliation with Plaintiffs and to further their fraud to which Galanis had pled guilty.  The

7  Aurelius Website also included legitimate documents sourced from legitimate sources in order to

8  increase the effectiveness of Defendants' fraud by causing readers without first-hand knowledge

9  of the documents or from whom they were sourced to be intentionally mislead or caused to draw

10  conclusions Defendants knew to be false.

11      155.    Defendants deceptively concealed the fact that Galanis was the Aurelius

12  Enterprise's undisclosed source for the article that claimed that Banc was "un-investible"

13  because it had an undisclosed relationship with Galanis.  Galanis knew that the Aurelius

14  Enterprise's allegation was false and unfair.

15      156.    The Aurelius Enterprise has sought, upon information and belief, to cover its

16  tracks by taking down the website bancexposed.com to hide much of their coordination with

17  Galanis and the paper trail of misleading documents.

18      157.    Upon information and belief, the documents provided by Galanis to the Aurelius

19  Enterprise were consistent with the documents he used to further his prior Tribal Bond Fraud and

20  other fraudulent activities.  Those documents were used by the Defendants on their website and

21  were known by the Defendants to be false or were published on the website with reckless

22  disregard for their truth or falsity at the time that the Second Blog Post was published.

23      158.    On January 23, 2017, Banc of California announced that its internal investigation

24  had not found any evidence of any violations of law by Sugarman and that Galanis had not had

25  any "direct or indirect control or undue influence" over Banc of California or Sugarman.

26      159.    Mr. Sugarman's decision to separate from the bank did not bring an end to the

27  attacks on him by the Defendants who continued to publish and circulate scurrilous rumors,

28  innuendo, and untruths about him in order to damage his reputation further.

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL.: (213) 943-1444 FAX: (212) 278-1733

docs-100162714.1

160.    These attacks were coordinated among and between Defendants and their associates who mutually promoted their common enterprise that included the scheme to distort the good name and reputation of Mr. Sugarman and then to profit therefrom.  Defendants called upon their relations to comment and post on social media to continually smear Sugarman and others with information they knew to be false.  This pattern and practice of coordinated smears enables Defendants to harm Sugarman and give the appearance that the allegations are accepted as true from a broad audience even though the posts, comments and smear campaign is part of a mutual promotion.

161.    Examples of these posts, tweets, and comments include: a tweet on October 18, 2016 from Aurelius stating that Galanis was financed by the Banc of California through off-balance sheet transactions; a tweet from Rota Fortunae on October 24, 2016 falsely stating that Banc was buying stock at $13/share to artificially support the stock price using a company stock buyback plan; a tweet on October 26, 2016 suggesting that Mr. Sugarman was going to attempt to flee the country due to his illegal activity and should have a "passport hold" put on him; a tweet by Fortunae calling on investor activist Richard Lashley to pressure Sugarman; a tweet by Aurelius on October 27, 2016 accusing Mr. Sugarman of trying to erase his biography and internet presence; accusing Mr. Sugarman of running illegitimate businesses on October 25, 2016; a tweet on January 26, 2017 which accused Mr. Sugarman of helping conceal Galanis' ownership in regulated entities; January 27, 2017, a day after the further scheme on January 26 failed, Rota Fortunae initiated an attack falsely characterizing an independent director's relationship with Mr. Sugarman, in a second tweet suggesting Sugarman's loan book was based on fraudulent math, and in a third tweet falsely suggesting Sugarman sold shares the day he resigned suggesting that that meant an earnings miss – which also was false; a tweet on October 24, 2018 in which Sugarman is accused of being in business with Galanis through COR Securities Holdings, Inc.; a tweet on January 8, 2018 in which Sugarman is accused of doing business through COR Clearing with a small broker-dealer that had settled an action with the SEC and had ties to individuals Aurelius deemed unsavory (and Sugarman does not know); April 19, 2017 tweet suggesting Sugarman committed fraud when reviewing his severance package

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL.: (213) 943-1444 FAX: (212) 278-1733

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1  paying him in line with a Resignation for Good Reason; August 20, 2018 tweet suggesting

2  Sugarman looks like fraudster Barry Minkow.

3       162.     As recently as October 24, 2018, Aurelius sought to damage a business

4  transaction between the then Sugarman affiliated COR Clearing and Axos Bank by suggesting

5  that the acquisition of COR Clearing had heightened regulatory risks among other things.

6  Likewise, on October 24, 2018, Aurelius falsely claimed that COR Clearing was "Sugarman's

7  business that was started in partnership with the now-incarcerated Jason Galanis".  Thus,

8  Defendants again tried to smear Mr. Sugarman and his businesses by falsely attempting to tie

9  them to Galanis when Defendants knew through their association and relationship with Galanis

10  as well as public documents that Galanis was not involved in the creation of COR Clearing and

11  that Galanis never owned a share, controlled or was part of COR Clearing.

12       163.     On February 9, 2017, Banc of California reported that its investigation was

13  completed and that the investigation indeed found that there were no violations of law and that

14  Galanis had no "indirect or direct control or undue influence" over Banc of California.  Banc of

15  California further reported that the "inquiry did not find that any loan, related party transaction,

16  or any other circumstance had impaired the independence of any director."  Mr. Sugarman was a

17  director during the period relevant to the inquiry.

18       164.     In 2019, Banc of California announced that Bergeson LP conducted another

19  independent investigation on behalf of an Ad Hoc Committee of the Board of Directors of Banc

20  of California that was comprised of Directors that were not on the Board during Sugarman's

21  tenure at the Bank and found no illegal acts by Sugarman and that Aurelius' claims that

22  Sugarman or Banc of California were controlled by Galanis were false.

23       165.     On information and belief, as recently as 2019, Defendants continue to smear

24  Sugarman and make false allegations that Sugarman was partners with Galanis, that Galanis

25  controlled Sugarman, the COR Plaintiffs, and Sugarman Entities, and that Sugarman committed

26  illegal acts.

27       166.     Defendants' scheme is thus ongoing.

28       167.     The Defendants, in pursuing this scheme, conspired to violate federal and state

docs-100162714.1

1    securities and other laws and did violate such laws.

2                            **CAUSES OF ACTION**

3                        **FIRST CAUSE OF ACTION:**
                              **UNFAIR COMPETITION**
4              **(CA Civil Code § 17200 – Against All Defendants)**

5          168.   The above paragraphs are realleged as if fully set forth herein.

6          169.   By the acts described above, the Defendants have engaged in unlawful, unfair or

7    fraudulent business acts and/or practices in violation of California Civil Code §17200, et seq.

8          170.   Defendants have maliciously and malevolently disparaged Sugarman and COR

9    Plaintiffs in the Initial Blog Post, the Second Blog Post, the publication of the website, and in the

10   Third Blog Post all by making false and untrue statements alleging that Sugarman had engaged

11   in unlawful behavior in the management of Banc of California, securities violations, crime and

12   other improper conduct.

13         171.   Defendants' unfair business practices were related to Defendants' attacks on Mr.

14   Sugarman's reputation and on the COR Plaintiffs' reputations and were also tangentially related

15   to the scheme whereby Defendants sought to use those attacks to profit with regard to Banc's

16   stock.

17         172.   Defendants Gibson, Castalian, Muddy, Kealy, Bjorkedal, Block, Galanis,

18   Mathews Parties, and Does are and were competitors with Sugarman and COR Capital who

19   make investments on behalf of private investors and investment funds.

20         173.   Defendants Castalian, Muddy, and Does are competitors with Sugarman and COR

21   Advisors who manage private investments in the financial services industry.

22         174.   Defendant Kealey was a competitor of Sugarman, COR Advisors and COR

23   Capital, who were all meaningful investors in or had business relationships with COR Clearing

24   (now known as Axos Clearing, LLC) who engages in the securities clearing business and

25   therefore harm to COR Clearing benefits KBW's parent Stifel Financial.

26         175.   As a result of Defendants' false and misleading disparagements in furtherance of

27   their anti-competitive scheme including the relationships among the Defendants and Galanis'

28   partnership thereto, Defendants have maliciously and malevolently interfered with Sugarman's

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

docs-100162714.1

1   business relationships – including but not limited to his relationship with COR Entities including

2   COR Securities, COR Clearing, and Banc of California – and have impugned and damaged his

3   standing in the investment, private equity, legal, civic, and banking community and his

4   reputation in general.

5       176.   As a result of Defendants' false and misleading disparagements in furtherance of

6   their anti-competitive scheme, the concealment of Defendants identities and the participation of

7   Galanis in Defendants' scheme, and Defendants deceptive efforts to conceal the coordination of

8   the Aurelius Enterprise with each individual Defendant and to conceal coordinated actions to

9   cause them to appear independent of one another, Sugarman and COR Plaintiffs have been

10  damaged.  For instance, Mr. Sugarman has been unable to compete with the Defendants in the

11  financial services industry and to pursue other profitable partnerships with banks and other

12  financial services organizations.  COR Plaintiffs have seen significant declines in annual

13  profitability, revenues, and business prospects.  Defendants have also damaged Plaintiffs

14  relationships and reputation in the broader investment, financial services, banking and civic

15  community as a whole, including with non-profit and civic organizations and other similar

16  organizations.  Defendants caused this result by maliciously and malevolently attacking and

17  damaging Sugarman's reputation through unfair and deceptive practices.

18      177.   As a result of Defendants' disparagements and attacks in furtherance of their anti-

19  competitive scheme, Sugarman has been damaged in fact as contemplated by California Civil

20  Code § 17200, et seq., in an amount to be proved at trial but believed to be in excess of $65

21  million.

22      178.   As a result of the Defendants' disparagements and attacks in furtherance of their

23  anti-competitive scheme, Sugarman has suffered irreparable harm the nature of which would

24  entitle him to an award of equitable relief as contemplated by California Civil Code § 17200, et

25  seq.

26      179.   Based upon the malicious nature of Defendants' disparagements in furtherance of

27  their anti-competitive scheme, Sugarman is entitled to an award of punitive damages pursuant to

28  California Civil Code §3294.

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

43
**COMPLAINT**

180.    Sugarman is also entitled to an award of his attorney's fees pursuant to California Code of Civil Procedure 1021.5.

**SECOND CAUSE OF ACTION:**
**CONSPIRACY TO ENGAGE IN UNFAIR COMPETITION**
<u>(Against All Defendants)</u>

181.    The above paragraphs are realleged as if fully set forth herein.

182.    Defendants formed the conspiracy as alleged above by no later than October 2016 when they came together as the Aurelius Enterprise and jointly published the Initial Blog Post as the first public action of the conspiracy.

183.    Defendants all jointly operated the conspiracy together as alleged above by creating and publishing false and misleading information about Mr. Sugarman and by jointly conspiring to and acting to harm Mr. Sugarman's reputation and his employment and Director roles with Banc of California, COR Securities, and future employers, all acts of unfair competition.

184.    Defendant engaged in acts of unfair competition in the State of California and intended to impact California.

185.    Defendants either all individually committed wrongful acts of unfair competition as against Mr. Sugarman or ratified the acts taken by their co-conspirators against Mr. Sugarman.

186.    Every Defendant herein acted as agent for every other defendant and all actions taken by any one defendant are attributable to and for the benefit of the conspiracy as a whole.

187.    As a result, Mr. Sugarman suffered damages in an amount to be proven at trial but believed to be not less than $65 million.

188.    Based upon the malicious nature of Defendants' actions in connection with their conspiracy in furtherance of their anti-competitive scheme, Mr. Sugarman is entitled to an award of punitive damages pursuant to California Civil Code §3294.

189.    Sugarman is also entitled to an award of his attorney's fees pursuant to California Code of Civil Procedure 1021.5.

**COMPLAINT**

docs-100162714.1

**ANDERSON KILL L.L.P.**
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

## THIRD CAUSE OF ACTION:
### DEFAMATION
#### (Against All Defendants)

190.     The above paragraphs are realleged as fully set forth herein.

191.     On October 24, 2018, the Defendants caused the Aurelius Enterprise to publish to third parties via Twitter a statement that COR Clearing was "Sugarman's business that was started in partnership with the now-incarcerated Jason Galanis".

192.     The foregoing statement is false and Defendants had no privilege to justify its publication.

193.     The foregoing statement is *per se* defamatory in that it implies that Sugarman is both involved in business dealings with a criminal and is somehow complicit in those criminal activities himself.

194.     Defendants knew that the statement was false and published it anyway or published it with reckless disregard of its truth or falsity.

195.     As a result of Defendants' publication of the defamatory statement through the Aurelius Twitter feed, Sugarman has been damaged in business and in his personal reputation in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION:
### VIOLATIONS OF THE RACKEETER INFLUENCED
### CORRUPT ORGANIZATIONS ACT – 18 U.S.C. § 1962(c)
#### (Against All Defendants)

196.     The above paragraphs are all realleged as if fully set forth herein.

197.     The Defendants have, as alleged herein, each individually engaged in the conduct of an enterprise through a pattern of two or more acts of racketeering activity.

198.     At all times relevant, Defendants, and each of them, were "persons" within the meaning of 18 U.S.C. Sec. 1961(3).

**Enterprise**

199.     At all times relevant, the Defendants, and each of them, associated in fact with each other and with others known and unknown so as to constitute an association in fact enterprise on the form of Aurelius within the meaning of 18 U.S.C. Sec. 1961(4).

**COMPLAINT**

200. At all times relevant, the enterprise was engaged in and its activities affected interstate commerce.

201. This association-in-fact enterprise had a structure and organization that was distinct from and existed apart from its predicate acts and from its participants/defendants.

202. The association-in-fact enterprise had relationships among those associated with the enterprise and sufficient longevity, over several years, to permit those associated with the enterprise to pursue the enterprise's purpose.

203. Each defendant is distinct and separate from the association-in-fact enterprise of which each is a component part and participant. The Aurelius Enterprise was operated as a separate entity apart from the individual defendants including the Aurelius Defendants and Windfall Defendants with its own brand identity on Seeking Alpha and Twitter and was designed to strategically conceal the participation of each individual defendant from those it intended to defraud or harm.

204. Each defendant participated, directly or indirectly, in the management and affairs of the association-in-fact enterprise through a pattern of racketeering activities. The role of each Defendant was similar – it was to help destroy Mr. Sugarman's reputation as retaliation for his providing information to the government in its investigation of Defendant Galanis and to do so by defrauding others (including the Sugarman Relationships) into taking actions that harmed Mr. Sugarman, COR Plaintiffs and Sugarman Entities, including among other things by conducting investigations, due diligence, termination of business relationships, and refusing to enter into commercial transactions. The Aurelius Enterprise sought to defraud the Sugarman Relationships by creating false and misleading articles, blog posts, and tweets from multiple seemingly independent sources that all falsely alleged criminal activity or wrongdoing on the part of Mr. Sugarman so that, in part, the Defendants believed the allegations were credible. In addition to harming Mr. Sugarman and COR Plaintiffs, Defendants also sought to increase the perceived credibility of the claims about Plaintiffs, amplify the publicity of their blog, and artificially depress the market price of the stock to profit from their short sales in order to increase the perceived credibility of the claims about Plaintiffs, amplify the publicity of their blog, and

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL.: (213) 943-1444 FAX: (212) 278-1733

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

1    attempt to force Mr. Sugarman from the Banc of California.  Galanis and the other Aurelius

2    Defendants participated in the management and operations of the Aurelius Enterprise by

3    providing documents, information, suggestions, and coordinating with co-conspirators.  Upon

4    information and belief, the website created in furtherance of the scheme was primarily created

5    through documents and information that were provided by Galanis, directly and indirectly, to the

6    other Aurelius Defendants as well as public source documents collected by other Aurelius

7    Defendants and their proxies.  All defendants played a part in the racketeering activity.

8        205.    Defendants associated with each other for the common purposes of engaging in

9    unfair business practices against Plaintiffs, in defamation against Plaintiff since July 2018 –

10   including specifically in October 2018 –  to retaliate against Mr. Sugarman for his cooperation

11   with the government in their case against Galanis, and specifically targeting Mr. Sugarman to

12   destroy his reputation and impair any future business prospects he may have in order to deter him

13   from seeking vindication and exposing the Defendants' schemes.

14       206.    Each Defendant participated in, contributed to, facilitated the publication of

15   and/or disseminated and validated the false and misleading materials, Blog posts, Tweets, and

16   emails, or such activities were undertaken by certain defendants for the benefit of the entire

17   enterprise as agents for the other members of the conspiracy.

18       207.    The actions taken by the Defendants through the association-in-fact enterprise

19   were racketeering predicate acts, as well as aiding and abetting the commission of these

20   predicate acts, including but not limited to wire and mail fraud as more fully alleged above but

21   including, and not limited to, the recruiting of others, the publication of the Initial Blog Post, the

22   Second Blog Post, and the Third Blog Post, the creation of the website, and the publication of

23   various Tweets, comments, articles and other social media comments,  direct messaging,

24   telephone calls and communications including with Sugarman Relationships, journalists, market

25   participants, lawyers, and others.

26       208.    A further common purpose of the enterprise was to engage in continuous

27   concealment of the enterprise's activities and each defendant, upon information and belief,

28   participated in the conduct of this aspect of the enterprise, as alleged above.  Such actions are

docs-100162714.1

wire and mail fraud and constitute racketeering predicate acts, as well as aiding and abetting the commission of these predicate acts.

**The Racketeering Violation**

209.    From on or about October 2016 and continuing through present, the Aurelius Defendants each of whom are persons associated with the enterprise, did knowingly and unlawfully conduct or participate in the affairs of the enterprise through a pattern of racketeering activity.

210.    Plaintiffs allege that the Defendants engaged in the illegal activities with the intent to commit fraud, engage in anti-competitive activities, and to damage the reputation of Mr. Sugarman.  The Defendants also worked with others to execute their scheme by concealing the material facts surrounding it.

211.    Plaintiffs allege that these activities constitute conduct committed by and through wire and mail fraud, acts indictable as "racketeering activity".

212.    Defendants' policies, practices, and acts described above constitute wire fraud under 18 U.S.C. § 1343, in that they constitute or are in furtherance of a scheme or artifice to defraud or obtain money by means of false or fraudulent pretenses, furthered or executed through Defendants' transmission of writings, signals, or data by means of wire.

**Pattern of Racketeering Activities**

213.    The course of conduct engaged in by the Aurelius Defendants is a pattern of racketeering activity because of the continuity and relatedness of such activities and because Plaintiffs allege that the Defendants engaged in multiple illegal activities, more than two within ten years of each other, qualifying as RICO predicates over multiple occasions that appear to still be continuing or poses a threat of continued activity and thus the scheme is "open-ended".

214.    Plaintiffs can show the relatedness prong because the predicate acts have the similar purposes, results, participants, or methods of commission or are related to the affairs of the enterprise.  All predicate acts had the same purpose of misrepresenting the relationships between Galanis and Mr. Sugarman and the COR Plaintiffs, and Galanis and Banc of California, to defraud and to destroy. harm, or impair Mr. Sugarman's reputation, the businesses of COR

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

Capital, COR Advisors, COR Securities, COR Clearing, Banc of California, and Mr. Sugarman's financial and employment prospects.

215.     Plaintiffs have set forth claims for wire fraud – the publication of the Initial, the Second, the Third Blog Posts, the electronic publication of the website, and the publication of various tweets and the acts take in covering up the scheme, the coordination of false regulatory filings and provision of false information and reports to journalists in order to harass and retaliate against Mr. Sugarman, the harassment through hiring individuals to track him and his family members, as well as other misconduct, as alleged above and herein.

216.     These acts were taken in furtherance of a scheme to defraud.

217.     These acts were taken with the specific intent to defraud.

218.     These acts were undertaken by use of the interstate wires in furtherance of the scheme.

## The Predicate Acts constituting Wire Fraud

219.     Defendants' use of the United States mail, wires, telephone, or internet, for purposes of effectuating the scheme to defraud as set forth above, include, without limitation, the following: the use of the federal wires system, email, and internet to post and publish the Blog Posts (as set forth above), the Tweets( as set forth above), the publication of the website (as set forth above), the whistleblower complaints (transmitted by email and/or phone), use of the internet to exchange and coordinate manipulative trading activities, false publications, and other racketeering activities; use of text messages and direct messages between and among the Aurelius Defendants, traders, market participants, and journalists; and emails through, between, and among the Defendants concerning coordinated trading activities and concerning the drafts of the blog posts and the other published materials.

220.     Further predicate acts include interstate phone calls with journalists for interviews such as phone calls with the Los Angeles Times, and the use of the following documents in furtherance of its racketeering activities: (i) the use of unauthorized and deceptive use of forgeries including documents created by Galanis that falsely purported to reflect Mr. Sugarman's signature, (ii) documents reflecting the unauthorized and deceptive use of Mr.

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

Sugarman's government issued identification that Galanis obtained without Mr. Sugarman's knowledge or consent, (iii) documents created using Plaintiff's confidential business documents which Galanis obtained through deception and fraud via electronic communications, and (iv) the use of fraudulent business documents created by Galanis that purported to represent business documents of COR Plaintiffs but in fact were fraudulent and unauthorized documents created and used by Galanis to commit fraud.

**Damages and Standing**

221.    Defendants have violated 18 U.S.C. § 1962(c) in that they are associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, and have conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.  Each violation directly and proximately resulted in Plaintiffs' losses to his reputation and direct economic injury including to his business and property.

222.    As a direct and proximate consequence of each of the predicate acts of racketeering activity outlined above and related to Plaintiffs, Plaintiffs suffered damages, including but not limited to the following: (1) the value of COR Securities and COR Clearing (both of which Mr. Sugarman controlled), which was being marketed for sale at the time, was irreparably harmed by over forty million dollars, (2) Mr. Sugarman's loss of employment; (2) loss of reputation; (3) ridicule and embarrassment; (4) financial and associated losses; (5) loss of business opportunities, (6) loss of banking relationships, (7) loss of investor relationships, (8) devaluation of business entities such as COR Plaintiffs, (9) on-going damage to employability and level of compensation, (10) inability to attract and retain employees, amongst other contractual damages (11) loss of access to credit, (12) costs incurred by Plaintiffs related to investigations, due diligences inquiries, and other processes caused by the false statements in the Aurelius Blog, and (13) other costs and expenses that Mr. Sugarman and COR Plaintiffs incurred due to the Aurelius Enterprise.

223.    Plaintiffs have been damaged in an amount to be proven at trial but believed to be not less than $65 million.

224.    Plaintiffs, under this statute, are also entitled to an award of treble damages and costs of suit, including reasonable attorneys' fees.

**FIFTH CAUSE OF ACTION:**
**VIOLATIONS OF THE RACKEETER INFLUENCED**
**CORRUPT ORGANIZATIONS ACT – 18 U.S.C. § 1962(d)**
**(Against All Defendants)**

225.    The above paragraphs are all realleged as if fully set forth herein.

226.    Plaintiffs allege that commencing in 2016, and during and continuing at all times throughout at least 2019, the Defendants conspired to violate 18 U.S.C. Sec. 1962(c) in violation of 18 U.S.C. Sec. 1962(d) in that each defendant agreed that each as a conspirator would conduct or participate in the affairs of the Enterprise through a pattern of racketeering activities, including acts as more fully described above in the Fourth Cause of Action.  Plaintiffs allege that the conspiratorial objective of that mutual agreement was intended to obtain Plaintiffs' interests in business and/or property, and that such conspiratorial conduct violates 18 U.S.C. Sec. 1962(d).

227.    Each of the Defendants was aware of the essential nature and scope of the enterprise alleged above in the Fourth Cause of Action and intended to, and did, participate in it.

228.    As a result, Mr. Sugarman suffered damages in an amount to be proven at trial but believed to be not less than $65 million.

229.    Plaintiffs, under this statute, are also entitled to an award of treble damages and costs of suit, including reasonable attorneys' fees.

**WHEREFORE,** based on the foregoing, Plaintiffs demand the following:

A.    On the First Cause of Action, that Defendants be adjudged to have unlawfully and unfairly competed against Plaintiffs under the laws of the State of Cal, Bus. & Prof. Code Sec. 17200, et seq. and that Plaintiffs be awarded damages in an amount sufficient to compensate them for the damages caused by Defendants' unfair competition in the form of a judgment of not less than $65 million, plus an award of reasonable legal fees and expenses;

B.    On the Second Cause of Action, that Defendants be adjudged to have unlawfully and unfairly competed against Plaintiffs under the laws of the State of Cal, Bus. & Prof. Code Sec. 17200, et seq. and that Plaintiffs be awarded damages in an amount sufficient to compensate

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

docs-100162714.1

1  them for the damages caused by Defendants' conspiracy to commit unfair competition in the

2  form of a judgment of not less than $65 million, plus an award of reasonable legal fees and

3  expenses;

4          C.     On the Third Cause of Action, that Defendants be adjudged to have defamed

5  Plaintiffs and that Plaintiffs be awarded damages in an amount sufficient to compensate them for

6  the damages caused by Defendants' defamation in an amount to be proven at trial but believed to

7  be not less than $25 million;

8          D.     On the Fourth Cause of Action, that Defendants be adjudged to have violated the

9  Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), and that Plaintiffs be

10  awarded damages in an amount sufficient to compensate them for the damages caused by these

11  violations in the form of a judgment of not less than $65 million, plus an award of treble

12  damages, reasonable legal fees and expenses;

13         E.     On the Fifth Cause of Action, that Defendants be adjudged to have violated the

14  Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d), and that Plaintiffs be

15  awarded damages in an amount sufficient to compensate them for the damages caused by these

16  violations in the form of a judgment of not less than $65 million, plus an award of treble

17  damages, reasonable legal fees and expenses;

18         F.     That Plaintiffs be granted punitive damages due to Defendants' willful and

19  deliberate conduct and to deter such conduct in the future;

20         G.     That Plaintiffs be awarded prejudgment and post-judgment interest on all

21  monetary awards; and

22         H.     Such additional relief in Plaintiffs' favor and against Defendants which the Court

23  deems appropriate.

24  ///

25  ///

26  ///

27  ///

28  ///

ANDERSON KILL L.L.P.
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733

docs-100162714.1

## JURY TRIAL DEMAND

Plaintiffs respectfully demand a trial by jury on all claims and issues so triable.

Dated:   New York, New York
         July 22, 2019

ANDERSON KILL L.L.P.

By: /s/(Bridget B. Hirsch0
    Bridget B. Hirsch, Esq.
    Jeremy E. Deutsch, Esq.
      *(Pro Hac Vic Admission to be Sought)*
    Christian V. Cangiano, Esq.
      *(Pro Hac Vic Admission to be Sought)*
    Wells Fargo Building
    355 South Grand Avenue, Suite 2450
    Los Angeles, CA  90071
    Tel:  (213) 943-1444
    Fax:  (212) 278-1733

    *Attorneys for Plaintiffs*

**COMPLAINT**

docs-100162714.1

**ANDERSON KILL L.L.P.**
WELLS FARGO BUILDING
355 SOUTH GRAND AVENUE, SUITE 2450
LOS ANGELES, CA 90071
TEL: (213) 943-1444 FAX: (212) 278-1733