UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-1453-DMG (DFM)** | Date | September 1, 2021 |
|---|---|---|---|
| Title | ***Steven A. Sugarman, et al. v. Muddy Waters Capital, LLC, et al.*** | Page | 1 of 15 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: [IN CHAMBERS] ORDER RE DEFENDANTS' MOTIONS TO STRIKE AND DISMISS AND DEFENDANTS' MOTION FOR RULE 11 SANCTIONS [110, 113]**

On March 6, 2020, Plaintiffs Steven Sugarman, COR Capital, LLC ("COR Capital"), and COR Advisors, LLC ("COR Advisors," and together with COR Capital, the "COR Plaintiffs") filed the operative First Amended Complaint ("FAC") in the United States District Court for the Northern District of California, asserting unfair competition, racketeering, and defamation claims against 15 Defendants, organized in the following groups:

1. Jason Galanis;
2. Carson Block and Defendant entities he founded and manages Muddy Waters Capital, LLC ("Muddy Waters Capital"), Muddy Waters Research LLC, MLAF LP, and MWCP LLC (together, "Muddy Waters" or the "Muddy Waters Entities");
3. James Gibson and Defendant entities he manages or directs Castalian Partners, LLC ("Castalian Partners") and Castalian Partners Value Fund, LP ("Value Fund") (together, "Castalian" or the "Castalian Entities"); and
4. David Q. Mathews, who manages investment advisor Defendant QKM, LLC ("QKM"), whose clients include Gary Robert Mathews, Kalyn Mathews Denno, Adam J. Denno, Keith Allen Dilling, and Rosemary Norris Hall (together, the "Mathews Defendants").

[Doc. # 104.]

On June 3, 2020, the Matthews Defendants, Muddy Waters, and Castalian (collectively, the "Moving Defendants")—*i.e.*, all Defendants but Galanis—filed a motion to strike and dismiss the FAC ("MTD"). [Doc. # 110.]¹ On June 18, 2020, Moving Defendants also filed a motion for sanctions ("MFS") against Plaintiffs. [Doc. # 113.] Both motions are fully briefed. [Doc. ## 114–22.] On September 21, 2020, the Court granted Moving Defendants' motion to continue and

---

¹ On June 12, 2020, the Court approved the parties' stipulation to extend Plaintiffs' deadline to respond to the MTD. [Doc. # 112.]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-1453-DMG (DFM)** | Date | September 1, 2021 |
|---|---|---|---|
| Title | *Steven A. Sugarman, et al. v. Muddy Waters Capital, LLC, et al.* | Page | 2 of 15 |

consolidate hearings on the MTD and MFS and ordered that hearings on those motions be vacated. [Doc. # 128.]²

On February 16, 2021, the Northern District of California granted Defendants' motion to transfer venue and transferred the action to this Court. [Doc. # 138.] Thereafter, the matter stood submitted before this Court.

Having carefully reviewed the parties' submissions, the Court **GRANTS in part** and **DENIES in part as moot** Moving Defendants' motion to strike and dismiss the FAC and **DENIES** Moving Defendants' MFS.

## I.
## BACKGROUND³

Plaintiff Sugarman is the former Chairman of the Board, President, and CEO of Banc of California, Inc. ("Banc") and also the Managing Member of the COR Plaintiffs, which he owns with his wife. FAC ¶¶ 4–8. He is also a prominent business leader in Los Angeles, having led Banc's highly publicized recapitalization in November 2010 and co-authored a book about corporate fraud. FAC ¶¶ 4, 8, 145, 153–54.

Sugarman and COR Plaintiffs assert claims against Moving Defendants and Galanis for defamation and violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code. § 17200 *et seq.*, and the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). FAC ¶¶ 3, 224, 251. Plaintiffs' claims are based on Defendants' alleged responsibility for the publication of false and misleading statements about Plaintiffs—in particular, about their asserted connection to Galanis, who, according to Plaintiffs, is a convicted, currently-incarcerated felon who presented himself as an investor and businessman until he pleaded guilty to participating in two separate financial fraud schemes. FAC ¶ 9.

---

² In addition, the Court ordered that Plaintiffs be afforded leave to file a surreply to Defendants' reply in support of the MFS, in light of Plaintiffs' objections to Moving Defendants' evidence filed on September 14, 2020 [Doc. # 124.]. On October 1, 2020, Plaintiffs filed a surreply. [Doc. # 131.]

³ The Court accepts all material facts alleged in the FAC as true solely for the purpose of deciding the Rule 12(b)(6) MTD. In addition, Plaintiffs request that the Court take judicial notice of a Tweet, two articles, and a federal district court order released after Plaintiffs filed their Opposition. [Doc. # 172.] Plaintiffs request that the Court consider the Tweet and articles for the truth of the matters asserted in those documents, which is not a proper ground for judicial notice. *See* Fed. R. Evid. 201; *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010). As for the district court order, the Court need not take notice of it to consider it. The Court therefore **DENIES** Plaintiffs' RJN in its entirety.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-1453-DMG (DFM)** | Date | September 1, 2021 |
|---|---|---|---|
| Title | ***Steven A. Sugarman, et al. v. Muddy Waters Capital, LLC, et al.*** | Page | 3 of 15 |

Plaintiffs allege that between 2012 and 2015, Galanis falsely claimed close affiliations to Sugarman, COR Plaintiffs, and other entities controlled by Sugarman in order to further Galanis' own fraudulent schemes. FAC ¶¶ 65–66. In early 2016, when federal law enforcement officials began investigating Galanis, Sugarman agreed to be interviewed as a witness, and information Sugarman provided was cited in Galanis' eventual indictment. FAC ¶¶ 68, 71.

According to Plaintiffs, Galanis became aware of Sugarman's cooperation with law enforcement and decided to retaliate against him. FAC ¶ 75. Galanis joined with Moving Defendants to form a conspiracy Plaintiff refers to as the "Smear Enterprise." FAC ¶¶ 84–86. The goal of the Smear Enterprise was to spread false statements and misinformation about Plaintiffs for the purposes of retaliation, intimidate Sugarman from cooperating any further with law enforcement, and profit from changes in the value of Banc stock as a result of the publication of the false statements and misinformation about Plaintiffs. FAC ¶¶ 45, 86.

In particular, Defendants allegedly conspired to publish, or caused to be published, several false statements about Plaintiffs through several media outlets. The first report occurred in September 2016 on Bloomberg News, describing investors' and advisors' "misgivings" about Sugarman's leadership at Banc, sweetheart deals he gave to his family and board members, and deals he gave to his brother, Jason Sugarman, who was a known associate of Galanis. FAC ¶ 44. Because reporters were unable to verify much of the information and Sugarman was able to review the final story before it was released, this first Bloomberg report did not include the "most scurrilous and false information" about Plaintiffs. *Id.*

The alleged false statements instead were published in a series of blog posts. On October 18, 2016, the pseudonymous blogger "Aurelius" posted a blog post on the website seekingalpha.com ("Seeking Alpha"), stating that most of Banc's "senior-most officers and board members have a broad mosaic of extensive and indisputable ties to Jason Galanis," and that "[w]e believe this introduces a significant un-discounted risk that notorious criminals gained control over the $10 Billion taxpayer guaranteed Banc of California." FAC ¶ 112; Doran Decl., Ex. A (Initial Blog Post) [Doc. # 76-2].[4] Aurelius wrote in this post (the "Initial Blog Post") that Galanis and his father "have a long history of secretly gaining control of banks and public companies via front men," and that "[t]he mere presence of a bank leadership team associated with Galanis should send diligent investors running for the hills." Initial Blog Post at 3[5] (emphasis omitted). The report summarized four main conclusions: (1) Galanis "controlled COR, BANC's Founding

---

[4] The FAC extensively refers this blog post and other publications by Aurelius, each of which the Moving Defendants have attached to the November 7, 2019 Doran Declaration in support of their MTD. *See* Doran Decl. [Doc. # 76-1]. Because Plaintiffs' claims rely on these documents, they are incorporated by reference in the FAC, and the Court may consider them at the pleading stage. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012).

[5] All page references herein are to page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-1453-DMG (DFM)** | Date | September 1, 2021 |
|---|---|---|---|
| Title | **_Steven A. Sugarman, et al. v. Muddy Waters Capital, LLC, et al._** | Page | 4 of 15 |

Shareholder"; (2) an "off-balance sheet lender controlled by BANC's senior-most officers financed Galanis"; (3) "BANC's lead 'independent' director has strong ties to Galanis"; and (4) "[w]e see similarities between BANC and Galanis' Gerova Financial fraud." _Id._ (emphasis omitted). The Initial Blog Post also stated that the author Aurelius had taken a short position on Banc stock, warned investors "to conduct their own due diligence," and stated that the post's opinions were "based upon information reasonably available to the author and obtained from sources the author believes to be reliable." _Id._ at 2–3. The Initial Blog Post included several specific bases for its statements, including that Galanis and Hugh Dunkerley, then a COR Capital executive, formed Valor Group Ltd., an entity used to finance the acquisition of asset managers who purchased fraudulent bonds, and that both Galanis and Dunkerley were indicted for their role in the scheme. _Id._ at 6.

Prior to the publication of these allegedly false statements, Moving Defendants took "short positions" in Banc's stock. FAC ¶¶ 34, 45, 86, 182. After publication of those statements, Banc's stock price indeed fell, enabling Moving Defendants to "generate windfall profits." FAC ¶¶ 113, 190.

Two days later, Aurelius published another blog post on Seeking Alpha ("Second Blog Post"). FAC ¶ 127. In the Second Blog Post, Aurelius cast doubt on the independence of an internal investigation by Banc. Doran Decl., Ex. D (Second Blog Post) [Doc. # 76-5]. After the post, Aurelius published a large quantity of its purported source material on a website, www.bancexposed.com. FAC ¶ 134. This material included several documents cited in the Initial Blog Post that had been used at one of Galanis' financial fraud trials as evidence of his false and fraudulent statements about Sugarman. _Id._ ¶¶ 36, 134, 138.

On January 26, 2017, Aurelius published a third Seeking Alpha post (the "Third Blog Post") providing information indicating even more business ties between Galanis and Sugarman and asking, "Has widespread fraud infected Banc of California?" Doran Decl., Ex. E (Third Blog Post) [Doc. # 76-6]. The source was purportedly "a whistleblower with deep knowledge of Jason Galanis' business dealings with "the Sugarmans." _Id._ Aurelius later amended the post to state that the whistleblower was not a Banc insider. FAC ¶ 143. Plaintiffs believe that the "whistleblower" was in fact Galanis. FAC ¶ 142.

On October 24, 2018, Aurelius posted a Tweet on twitter.com that stated that a Sugarman enterprise, COR Clearing, was "Sugarman's business that was started in partnership with the now-incarcerated Jason Galanis." FAC ¶ 177; _see also_ FAC ¶ 153.m (citing https://twitter.com/AureliusValue/status/1055261461130416129) ("Incredible. CEO hypes acquisition of penny stock specialist COR Clearing. This is Sugarman's business that was started in partnership with the now-incarcerated Jason Galanis.") (last accessed July 24, 2021). Galanis

Case 2:21-cv-01453-DMG-DFM Document 187 Filed 09/01/21 Page 5 of 15 Page ID #:188

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-1453-DMG (DFM)** | Date | September 1, 2021 |
|---|---|---|---|
| Title | ***Steven A. Sugarman, et al. v. Muddy Waters Capital, LLC, et al.*** | Page | 5 of 15 |

was not involved in the creation of COR Clearing and never owned a share or otherwise was a part of COR Clearing. FAC ¶ 177.

Numerous lawsuits and investigations resulted from the fallout from these reports, including an investigation from the SEC into Sugarman, which concluded without any action taken against Sugarman. FAC ¶ 74. One of those lawsuits is the related securities litigation pending before this Court. *See In re Banc of Cal. Sec. Litig.*, SA CV 17-00118-DMG (AFMx).

With respect to the specific roles that Defendants played in the "Smear Enterprise," Plaintiffs allege that Galanis is the lynchpin of a purported conspiracy to take down Sugarman and his companies, having "admitted that he was the source" for Aurelius by paying attorney Thomas Mazzucco "to collect and provide the fraudulent documents used in [Galanis'] fraudulent activities" to Moving Defendants, who control various online presences, including Aurelius and the Seeking Alpha website. FAC ¶¶ 19, 25, 41–42, 89. The sole basis for these allegations is a transcript of a deposition of Galanis in the related Securities Litigation. FAC ¶ 89 & Ex. J (Galanis Depo.) at [Doc. # 104-10].

As for the Castalian Defendants, Plaintiffs allege that they "operate and control an on-line presence known as 'Aurelius.'" FAC ¶ 19. Plaintiffs' basis for this allegation is that an executive at another public company who had been the target of an attack by "Aurelius" told Sugarman that "he was personally aware of evidence which showed that [Defendant] Gibson was the author of the content under the Aurelius on-line persona['s] blog and Twitter account." *Id.* Plaintiffs also rely on sealed FINRA trading records produced in the related Securities Litigation and Sugarman's "discussions with reporters at the Los Angeles Times" to allege the Castalian Entities' participation. FAC ¶ 116.

Regarding Muddy Waters, which sells a for-profit newsletter and makes various social media and media appearances relating to Muddy Waters' short positions, Plaintiffs claim—based on Sugarman's "discussions" with unnamed reporters—that Defendant Block provided Bloomberg News with information about Sugarman's connections to Galanis. FAC ¶ 109. Plaintiffs also allege on information and belief that the Muddy Waters Entities did not disclose their trading in Banc stock and sought to distance their public personae from the Sugarman-Galanis story based on concerns about their own reputation, instead relying on the Aurelius and other pseudonymous online presences. FAC ¶¶ 110–11. Plaintiffs also allege Muddy Waters' involvement based on sealed FINRA trading records produced in the related Securities Litigation, FAC ¶ 115, and the fact that Muddy Waters has admitted in a different federal civil case to using anonymous blogs, including Seeking Alpha, to attack another public company and profit from trading in the wake of those attacks, FAC ¶ 13.

As for the Mathews Defendants, Plaintiffs allege that David Q. Mathews and QKM received advance drafts of Aurelius' Blog Posts about Sugarman and "read, edited, drafted and

Case 2:21-cv-01453-DMG-DFM Document 187 Filed 09/01/21 Page 6 of 15 Page ID #:189

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-1453-DMG (DFM)** | Date | September 1, 2021 |
|---|---|---|---|
| Title | ***Steven A. Sugarman, et al. v. Muddy Waters Capital, LLC, et al.*** | Page | 6 of 15 |

approved the publication" of the posts, and that all of the Mathews Defendants were aware of and "approve[d] the publication" of the posts. *See id.* ¶¶ 26, 117, 132, 150. Each Mathews Defendant "establish[ed] significant short positions" before the Initial Blog Post, followed by an exit from that position. *See, e.g.*, FAC ¶¶ 25–26, 117, 186. Relying on public documents, trading records, and "conversations . . . with market participants with relationships in Dallas," Plaintiffs allege that David Q. Mathews and QKM operate the online presence "Rota Fortunae," which has "connections to investors in Texas and Kan[s]as" including all of the other Mathews Defendants, who are part of a "regular group of investors who invest with Mat[]hews and QKM pursuant to a pre-approved and pre-arranged strategy." FAC ¶ 25. In February 2017, after the Third Blog Post was published, Seeking Alpha paid the Mathews Defendants, through the Rota Fortunae online presence, for another blog post containing the same "repackaged" false information about Galanis' connection to Sugarman and Banc of California. FAC ¶ 208.

According to Plaintiffs, members from each group of Moving Defendants communicated about the Initial Blog Post and coordinated short positions. FAC ¶ 119. For example, Plaintiffs claim "other members" of the alleged enterprise "knew that the source of the documents and information was Galanis," but "conceal[ed] Galanis' involvement" and their own identities. FAC ¶¶ 96–97, 101. Plaintiffs also claim, on information on belief, that two other investors who purchased put options in Banc stock after the Initial Blog Post and one who purchased put options after the Third Blog Post were deceived by the posts' fraudulent statements and lost money when their options expired, worthless, because Moving Defendants' trading had already caused Banc's stock price to be artificially low.[6] *Id.* ¶¶ 201–04.

Multiple internal and external investigations of Banc found no evidence of legal violations by Sugarman or any control or undue influence by Galanis over Banc or Sugarman. FAC ¶¶ 216–19. Sugarman has since separated from Banc. FAC ¶ 217.

As a result of the "Smear Enterprise," Plaintiffs assert they have suffered harm because false statements have caused loss to their business and property and to Sugarman's lawful employment and livelihood, future lawful employment prospects, and profits. FAC ¶ 168. The false statements caused readers who had relationships with Sugarman to cease to do business with Sugarman and the COR Plaintiffs and change deal terms to their detriment. FAC ¶ 113; *see also id.* ¶¶ 169–80 (providing examples of lost business opportunities). Plaintiffs further allege Defendants have "impugned and damaged [Sugarman's] standing in the investment, private equity, legal, civic, and banking community and his reputation in general." FAC ¶ 229.

---

[6] "A put option is the right to sell a security at a specified price; thus, the value of a put option increases as the price of the underlying security falls." *Magma Power Co. v. Dow Chem. Co.*, 136 F.3d 316, 321 n.2 (2d Cir. 1998).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-1453-DMG (DFM)** | Date | September 1, 2021 |
|---|---|---|---|
| Title | ***Steven A. Sugarman, et al. v. Muddy Waters Capital, LLC, et al.*** | Page | 7 of 15 |

Plaintiffs filed their initial Complaint on July 24, 2019. [Doc. # 1.] The operative FAC was filed on March 6, 2020. [Doc. # 104.]

## II.
## MOTION TO DISMISS

The Court begins with Moving Defendants' arguments to dismiss the RICO and RICO conspiracy claims under Rule 12(b)(6). The Court incorporates by reference the legal standard set forth in the transferor Court's Order granting in part and denying in part Moving Defendants' Motion to Dismiss the initial Complaint. Feb. 3, 2020 Ord. at 5–6 [Doc. # 102]. Moving Defendants assert that Plaintiffs have failed again to plausibly allege a RICO claim, and thus the RICO and RICO conspiracy claims must be dismissed under Rule 12(b)(6). MTD at 21.

The Court agrees, albeit for a reason different from that put forth by Defendants. Moving Defendants and Galanis allegedly formed an association-in-fact enterprise referred to as the "Smear Enterprise," and each Defendant's role was

> to help destroy Mr. Sugarman's business as retaliation for his providing truthful information to the government in its investigation of Defendant Galanis, and to attempt to threaten, intimidate or corruptly persuade Mr. Sugarman from providing further testimony regarding Galanis, and to do so by defrauding others (including the Sugarman Relationships) into taking actions that harmed Mr. Sugarman, COR Plaintiffs and Sugarman Entities, including among other things by conducting investigations, due diligence, termination of business relationships, and refusing to enter into commercial transactions. . . .
>
> In addition to harming Mr. Sugarman and COR Plaintiffs, Defendants also sought to increase the perceived credibility of the claims about Plaintiffs, obtain payment from Seeking Alpha on false pretenses, and *artificially depress the market price of the stock to profit from their short sales* in order to increase the perceived credibility of the claims about Plaintiffs and attempt to force Mr. Sugarman from the Banc of California.

FAC ¶ 256 (emphasis added). The italicized language is key. Although Plaintiffs attempt to portray the Smear Enterprise's shared goal as retaliating against and intimidating Sugarman due to his cooperation with federal law enforcement against Galanis, the only plausible inference from the FAC is that the Moving Defendants' true goal was to profit off their short positions in Banc stock. The FAC is rife with allegations describing Galanis' motivations to retaliate against Sugarman, but contains zero facts explaining why Moving Defendants would share that motivation. Indeed, it acknowledges that "Defendants, *other than Galanis*, were also motivated

Case 2:21-cv-01453-DMG-DFM  Document 187  Filed 09/01/21  Page 8 of 15  Page ID #:191

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-1453-DMG (DFM)** | Date | September 1, 2021 |
|---|---|---|---|
| Title | ***Steven A. Sugarman, et al. v. Muddy Waters Capital, LLC, et al.*** | Page | 8 of 15 |

by an intention to profit from their short positions in the Company based on the publication of the false narrative and document." FAC ¶ 45 (emphasis added).

Moving Defendants' profit motivation becomes a problem when considering the RICO predicate acts alleged. The FAC specifically alleges that Moving Defendants took short positions in Banc stock for the purpose of profiting off of the Blog Posts' insinuation that Banc was controlled by a convicted fraudster, and that Moving Defendants' various online presences coordinated the "Smear Campaign" for the purpose of achieving their short-sale profits. *See* FAC ¶ 19 ("Gibson and the Castalian Entities have joined with Block and Muddy Waters in their joint effort to profit from trading in the wake of such attacks."); ¶ 25 ("[David Q.] Matthews and QKM use the Rota Fortunae on-line presence to attack targets people and companies with an eye towards profiting from trading done in the wake of such attacks."). The FAC therefore describes a quintessential "short attack" or "short and distort" scheme—one that is premised on fraud related to the sale of securities.[7]

The Private Securities Litigation Reform Act ("PSLRA") amended Section 1964(c) of RICO to create an exception related to securities fraud. *See* Pub. L. No. 104-67, § 107, 109 Stat. 737, 758. Although RICO creates a general rule that a person injured in his business or property may seek a private civil remedy for RICO violations, the PSLRA added language that "no person may rely upon any *conduct* that would have been *actionable as fraud in the purchase or sale of securities* to establish a violation of § 1962" (the "RICO Amendment"). 18 U.S.C. § 1964(c) (emphasis added); *see Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007) (affirming dismissal of RICO claims where the alleged predicate acts were related to the sale of securities). This amendment "was intended not simply 'to eliminate securities fraud as a predicate offense in a civil RICO action,' but also to prevent a plaintiff from 'plead[ing] other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud.'" *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 327 (3d Cir. 1999) (quoting H.R. Rep. No. 104-368, at 47 (1995) (Conf. Rep.)).

Section 10(b) of the Securities Exchange Act of 1934 and Rule 10(b)–5 of the Securities and Exchange Commission ("SEC") make it unlawful for any person, in connection with the purchase or sale of any security: (1) to engage in fraud, (2) to make an untrue statement regarding a material fact or (3) to make a misleading statement by omitting a material fact. 15 USC § 78j(b); 17 CFR § 240.10b–5. The elements of a Rule 10b–5 claim are: (1) material misrepresentation or

---

[7] According to *Aurelius v. BofI Fed. Bank*, No. MC 16-71 DSF (FFM), 2016 WL 8925145, (C.D. Cal. Sept. 20, 2016), which both sides cite in their briefing, a "short attack," also known as a "short and distort" scheme, is "[a]n illegal practice employed by unethical internet investors who short-sell a stock and then spread unsubstantiated rumors and other kinds of unverified bad news in an attempt to drive down the equity's price and realize a profit." *Id.* at *1, n.1 (quoting *Short and Distort*, Investopedia, http://www.investopedia.com/terms/s/shortanddistort.asp (September 13, 2016)).

Case 2:21-cv-01453-DMG-DFM   Document 187   Filed 09/01/21   Page 9 of 15   Page ID #:192

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-1453-DMG (DFM)** | Date | September 1, 2021 |
|---|---|---|---|
| Title | ***Steven A. Sugarman, et al. v. Muddy Waters Capital, LLC, et al.*** | Page | 9 of 15 |

omission of fact; (2) scienter; (3) connection with the purchase or sale of a security; (4) reliance; (5) economic loss and (6) loss causation. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005).

According to the FAC, Moving Defendants all took short positions in Banc's stock prior to the Initial Blog Post, enabling Moving Defendants to generate "windfall" profits after Banc's stock price fell after the Initial Blog Post's publication. FAC ¶¶ 34, 45, 86, 113, 182, 190. In addition, at least three named investors—Jane Street, Simplex, and Andrew Left—purchased put options in Banc after the Initial Blog Post or the Third Blog Post were published. Those put options were worthless due to Moving Defendants' short positions already artificially deflating the price of Banc's stock. Through these allegations, Plaintiffs intended to show that Moving Defendants engaged in the RICO predicates of mail and wire fraud by "obtain[ing] money or property from the one who is deceived." *Monterey Plaza Hotel Ltd. P'ship v. Local 483*, 215 F.3d 923, 926 (9th Cir. 2000) (emphasis omitted); *see* Opp. to MTD at 30–31.[8] Instead, these allegations appear to fall under the RICO Amendment and satisfy the requirements of an SEC Rule 10b-5 claim. According to the FAC, Moving Defendants knowingly made fraudulent statements about the Sugarman-Galanis connection that were material to the value of Banc stock, upon which outside investors relied to purchase put options, and which caused them to lose the monetary value of the put options.

Although the parties have assiduously avoided briefing this issue,[9] it is obvious that Moving Defendants' activities in connection with the Blog Posts, www.bancexposed.com website, and Tweets are "actionable as fraud in the purchase or sale of securities." 18 U.S.C. § 1964(c). Indeed, the alleged fraud seeking to artificially deflate the price of Banc's stock is as closely related to the purchase and sale of securities as the tax-reduction maneuver at issue in *Swartz*, which aimed to artificially inflate the value of a certain stock. 476 F.3d at 761; *cf. In re Fin. Corp. of Am. S'holder Litig.*, 796 F.2d 1126, 1130 (9th Cir. 1986) (finding fraudulent accounting advice not

---

[8] But even if the PSLRA exception did not apply, and Moving Defendants' alleged wire and mail fraud could constitute RICO predicates, the FAC fails to satisfy the heightened pleading requirements of Rule 9(b) in demonstrating that Moving Defendants obtained money from defrauded investors. Plaintiffs only allege that third-parties bought put options around the time of the blog posts, Plaintiffs had "discussions" with one of them "Simplex" (without specifying, for instance, when this discussion occurred, with whom specifically, or the content of the discussion), and Moving Defendants' "put option sales" "were the only liquidity being provided to the purchases in the market at the time," without specifying which Moving Defendants. FAC ¶ 202. Nor can Plaintiffs assert that the basis of their claims is sealed FINRA trading records produced in the related Securities Litigation. *See* FAC ¶¶ 201–04. As Plaintiffs have admitted, these records are governed by a protective order, and Plaintiffs have not sought leave of the court to make use of the information, in violation of the order. *See In re Banc*, No. SA 17-00118-DMG (DFMx), Doc. # 83 (C.D. Cal. Nov. 13, 2017) (confidential material may not be "use[d] for any purpose other than this litigation").

[9] Understandably so—Plaintiffs clearly want their RICO claim to avoid the PSLRA exception, and Defendants have no incentive to highlight their own potential SEC rule violations.

Case 2:21-cv-01453-DMG-DFM Document 187 Filed 09/01/21 Page 10 of 15 Page ID #:193

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-1453-DMG (DFM)** | Date | September 1, 2021 |
|---|---|---|---|

| Title | **Steven A. Sugarman, et al. v. Muddy Waters Capital, LLC, et al.** | Page | 10 of 15 |
|---|---|---|---|

sufficiently related to the purchase or sale of securities). Thus, any alleged wrongdoing by Moving Defendants that is actionable as securities fraud cannot serve as a RICO predicate. *See Howard v. Am. Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000) (rejecting plaintiffs' contention that the RICO Amendment does not apply, because another plaintiff could have standing to bring securities fraud claims); *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 277 (2d Cir. 2011) (holding that the RICO Amendment "bars civil RICO claims alleging predicate acts of securities fraud, even where a plaintiff cannot itself pursue a securities fraud action against the defendant.").

Moreover, Moving Defendants' other conduct alleged in the FAC is not separable from the potential securities fraud described above. *Swartz*, 476 F.3d at 761. Plaintiffs allege that Moving Defendants committed fraud on Seeking Alpha because Aurelius' blog posts violated Seeking Alpha's terms of service. FAC ¶¶ 210–13. Those terms provide, *inter alia*, that a paid contributor must agree "not write about a stock with the intention to boost or reduce the stock's price and sell (or buy) the stock into the resulting strength or weakness" and "to disclose within three days of the publication of a submission any intent by the poster to sell or buy a stock that they are writing about." FAC ¶ 206. In light of these specific terms of service, Moving Defendants' purported fraud on Seeking Alpha is inextricable from Moving Defendants' short attack scheme, *i.e.* actionable securities fraud. Related fraud on Seeking Alpha therefore cannot constitute a predicate act under the PSLRA exception.

The FAC also fails to factually support the remaining RICO predicates it cites: retaliation against a witness or informant, 18 U.S.C. § 1513; witness tampering, 18 U.S.C. § 1512; and money laundering, 18 U.S.C. § 1956. Again, the FAC fails to allege that any Moving Defendants shared Galanis' highly personal motives to retaliate against Sugarman. Claims based on "information and belief," without the factual basis for such claims, do not satisfy FRCP 9(b)'s heightened pleading requirement. *Moore*, 885 F.2d at 541; *see also Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (noting that although the "general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge," a plaintiff who makes allegations on information and belief must state the factual basis for the belief."). Moreover, intent is an element of the witness retaliation and tampering predicate acts. *See* 18 U.S.C. 1513(e) (requiring action to be taken "knowingly, with the intent to retaliate"); *id.* § 1512(b) (requiring an actor to "knowingly use[] intimidation, threaten[], or corruptly persuade[] another person . . . with *intent* to" influence, delay, or prevent testimony). Plaintiffs also provide no factual allegations that any of the Moving Defendants engaged in conduct with the *intent* (1) to retaliate against Sugarman for his cooperation with federal law enforcement against Galanis, or (2) to intimidate Sugarman into not testifying in Galanis' second trial. As for money laundering, the FAC does not allege that any Moving Defendant participated in financial transactions between Galanis and his personal attorney, with knowledge that such transactions were designed to conceal the nature, location, or source of proceeds Galanis gained from financial fraud. *See id.* § 1956 (requiring knowledge that proceeds were from a specific unlawful activity and knowledge that the financial transaction was designed

Case 2:21-cv-01453-DMG-DFM Document 187 Filed 09/01/21 Page 11 of 15 Page ID #:194

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-1453-DMG (DFM)** | Date | September 1, 2021 |
|---|---|---|---|
| Title | ***Steven A. Sugarman, et al. v. Muddy Waters Capital, LLC, et al.*** | Page | 11 of 15 |

to conceal the nature, location, or source of the proceeds). The FAC therefore does not state that any Moving Defendants engaged in the predicate act of money laundering.

As for the RICO conspiracy allegation, Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard*, 208 F.3d at 751. As discussed above, to the extent the FAC alleges any Moving Defendant agreed to facilitate the operation of the Smear Enterprise, it was through only acts of actionable securities fraud. Because Moving Defendants' involvement is limited to activities not actionable under RICO due to the PSLRA exception, they cannot have agreed to substantive RICO violations or to participate in a RICO predicate offense.

Hence, Plaintiffs' RICO claims are subject to dismissal. Although it appears unlikely at this juncture, having already granted Plaintiffs leave to amend once, the Court is not certain that the pleading could not possibly be cured by the allegation of other facts, especially since the PSLRA exception was not the subject of the parties' briefing. *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

Defendants' motion to dismiss Plaintiffs' RICO claims is therefore **GRANTED, with a final leave to amend**.

As the transferor Court did when it dismissed Plaintiff's federal RICO causes of action, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law causes of action. *See* Feb. 3, 2020 Ord. at 10–11 (citing 28 U.S.C. § 1367(a)). The Court therefore **DISMISSES without prejudice** the UCL and defamation claims and **DENIES as moot** the motion to strike those claims.

### III.
### MOTION FOR SANCTIONS

Moving Defendants bring the MFS, requesting that the Court impose sanctions on Plaintiffs under Federal Rule of Civil Procedure 11(b)(3), 28 U.S.C. section 1927, or the Court's inherent authority. MFS at 1, 2. Moving Defendants argue that Plaintiffs have "made up facts" in the FAC that are not only unsupported, but contradicted by, evidence to which their counsel did or should have had access. MFS at 1. Based on these errors, Moving Defendants assert that Plaintiffs' counsel did not make an "inquiry reasonable under the circumstances," as Rule 11 requires. Fed. R. Civ. P. 11(b), (b)(3).

In relevant part, Rule 11 requires that an attorney who presents a pleading, written motion, or other paper to the Court certify that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-1453-DMG (DFM)** | Date | September 1, 2021 |
|---|---|---|---|
| Title | ***Steven A. Sugarman, et al. v. Muddy Waters Capital, LLC, et al.*** | Page | 12 of 15 |

to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b), (b)(3). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." *Id.* 11(c)(1).

The "central purpose of Rule 11 is to deter baseless filings." *Townsend v. Holman Consulting Co.*, 929 F.2d 1358, 1363 (9th Cir. 1990) (*en banc*) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). At the same time, Rule 11 "must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy." *Id.* (citing *Cooter*, 496 U.S. at 393). If a complaint states an arguable claim, sanctions are generally inappropriate. *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 201 (9th Cir. 1988). Moreover, this Court "has wide discretion in determining what sanctions should be imposed" for a Rule 11 violation. *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986). Where, as here, the FAC is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually "baseless" from an objective perspective, and (2) if the attorney has conducted "a reasonable and competent inquiry" before signing and filing it. *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005).

Additionally, 28 U.S.C. section 1927 provides that a court "may" require "[a]ny attorney" who "multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "Sanctions pursuant to section 1927 must be supported by a finding of subjective bad faith." *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015) (quoting *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989)). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purposes of harassing an opponent." *New Alaska*, 869 F.2d at 1306 (quoting *Estate of Blas ex rel. Chargualaf v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986)).

Moving Defendants point to several claims in the FAC as the basis of their MFS. The Court addresses each in turn.

**A.      Reliance on Galanis Deposition Transcript**

According to Moving Defendants, Galanis' deposition testimony in the related Securities Litigation makes clear that Plaintiffs have no factual basis to allege that "'[b]etween May 2016 and October 2016, [prior to the Initial Blog Post,] Galanis joined together with [Moving

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-1453-DMG (DFM)** | Date | September 1, 2021 |
|---|---|---|---|
| Title | ***Steven A. Sugarman, et al. v. Muddy Waters Capital, LLC, et al.*** | Page | 13 of 15 |

Defendants] to conspire to and to join and conduct the Smear Enterprise . . . targeting Mr. Sugarman, COR Plaintiffs and Sugarman Entities . . . .'" MFS at 13 (quoting FAC ¶ 85). Thus, Moving Defendants argue that any claims relating to this assertion are objectively baseless and warrant sanctions. They cite to the following portion of Galanis' testimony:

> A: So—just so my testimony is consistent and the record's clear, I did not have contact with Aurelius until after publication of the first blog. And then the bank response. So I made no contact until after the response to the—to the blog.

Standa Decl., Ex. C at 314:23–315:11 [Doc. # 97-3]; *see* MFS at 3. Moving Defendants argue that Galanis' statement clearly indicates that he could not have provided documents and information to Moving Defendants for the Initial Blog Post.

But Plaintiffs argue that Galanis made this statement on the second day of his testimony, and another statement he made on the first day contradicts it:

> Q. And you never provided any information to the person or the entity that identified themselves as Aurelius?
>
> A. I did.
>
> Q. When?
>
> A. **Sometime after the public statements were made by the bank, I provided some information as a follow-up, which resulted in a subsequent publication or update.** And the two pieces of information that I supplied included documentation about the specific transaction with Steve Sugarman, his entities, his COR entities, and myself and my entity that I felt refuted his false assertion that I had no business relationship with him or his entity.

FAC, Ex. J (Galanis Depo.) at 40:16–41:4 [Doc. # 104-10] (emphasis added). Plaintiffs argue that this statement can be interpreted to indicate that "public statements" meant the initial Bloomberg News article, and the "subsequent publication" referred to the Initial Blog Post. Opp. to MFS at 14 [Doc. # 117]. Plaintiffs argue that the apparent contradiction can be resolved by recognizing that Galanis is a convicted felon whose statements may have changed on the second day. *Id.* Although the Court does not find Plaintiffs' interpretation to be the most reasonable, it does not find it so unbelievable as to treat Plaintiffs' statement as "baseless," or arising solely to harass Defendants. *See Townsend*, 929 F.2d at 1363; *New Alaska*, 869 F.2d at 1306. Plaintiffs point to Moving Defendants' own recognition that Galanis's testimony lacks consistency and credibility at points. Opp. to MFS at 16. For example, Galanis' attorney Thomas Mazzucco denied ever

Case 2:21-cv-01453-DMG-DFM   Document 187   Filed 09/01/21   Page 14 of 15   Page ID #:197

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-1453-DMG (DFM)** | Date | September 1, 2021 |
|---|---|---|---|
| Title | ***Steven A. Sugarman, et al. v. Muddy Waters Capital, LLC, et al.*** | Page | 14 of 15 |

providing documents to Aurelius or Aurelius' lawyers, although Galanis testified that he had communicated with Aurelius through Mazzucco. *Compare* Mazzucco Decl. at ¶ 5 [Doc. #113-1] (asserting that he never learned of the existence of "Aurelius" until April 2020) *with* Galanis Depo. at 313:4 – 314:22 [Doc. # 104-10]. Moving Defendants request for sanctions on this ground fails.

**B.    Failure to Confirm with Galanis' Attorney**

Moving Defendants argue that because Mazzucco was never in contact with Moving Defendants, Plaintiffs cannot claim that Galanis, working through his lawyer Thomas Mazzucco, provided documents and information to Aurelius in 2016. *Compare* Mazzuco Decl. at ¶ 6 [Doc. #113-1] *with* FAC ¶¶ 41, 89, 91, 94, 96. But Plaintiffs assert that it would have been unreasonable to have contacted Mazzucco in their pre-filing investigation of the veracity of Galanis' sworn testimony, as this might have asked him to violate attorney-client privilege. Opp. to MFS at 19. Moreover, Moving Defendants cite to no authority or case law asserting that Plaintiffs must solicit a denial from one of Defendants' former attorneys before making claims against them. Their request for sanctions on this ground fails.

**C.    Other Claims**

The Court does not find Plaintiffs' other claims specified in the MFS to be factually "baseless" from an objective perspective. MFS at 14–15; FAC ¶¶ 74, 118, 139. Not only does the Court find Moving Defendants' arguments unpersuasive with respect to these claims, Moving Defendants fail to cite to any authority in support in their motion. Indeed, existing authority is contrary to Defendants' arguments. For example, an attorney is permitted to rely on the firsthand knowledge that his or her client possesses and shares with counsel without fear of sanction. *See Insta Entm't, Inc. v. Bizzy Entm't, Inc.*, No. CV 10-632 SVW (Ex), 2010 WL 11597511, at *3 (C.D. Cal. 2010) (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1277 (2d Cir. 1986) (holding that plaintiff's counsel reliance upon his client's descriptions of conversations with a defendant concerning the defendant's ownership of a business was not unreasonable or sanctionable)). Plaintiffs' counsel therefore may rely on their own client, Sugarman, for the factual bases of their claims, without being sanctioned.

Furthermore, sanctions under Rule 11 are an extraordinary remedy and must be exercised with extreme caution. *Operating Engineers Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988). The Court declines to exercise its discretion to impose such an extraordinary remedy here.

Accordingly, Moving Defendants' request for sanctions is **DENIED** in its entirety.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-1453-DMG (DFM)** | Date | September 1, 2021 |
|---|---|---|---|
| Title | ***Steven A. Sugarman, et al. v. Muddy Waters Capital, LLC, et al.*** | Page | 15 of 15 |

# IV.
# CONCLUSION

In light of the foregoing, Moving Defendants' motion to strike and dismiss the FAC is **GRANTED, with leave to amend**, with respect to Plaintiffs' RICO and RICO conspiracy claims. [Doc. # 110.] Because the Court declines to exercise supplemental jurisdiction over the state-law claims for defamation and violation of the UCL, those claims are **DISMISSED without prejudice**, and the motion to strike them under California's anti-SLAPP law is **DENIED** as moot. The Court also **DENIES** Moving Defendants' Rule 11 Motion for Sanctions. [Doc. # 113.]

Plaintiffs shall file their Second Amended Complaint by **September 22, 2021**, or file a notice informing the Court and Defendants that they do not intend to amend. Defendants shall file their response to the operative pleading within 21 days after the filing of the Second Amended Complaint or the notice of intent not to amend. **Failure to timely file a Second Amended Complaint will result in the dismissal of this action, with prejudice.**

**IT IS SO ORDERED.**